## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ ) | |
| DAVID CAMP and ) | CIVIL ACTION NO: _____ |
| KEITH HADMACK, ) | |
| on behalf of themselves and all ) | |
| others similarly situated, ) | |
| ) | |
|      Plaintiffs, ) | |
| ) | |
|      v. ) | |
| ) | |
| BIMBO BAKERIES USA, INC. and, ) | |
| BIMBO FOODS BAKERIES ) | |
| DISTRIBUTION, LLC ) | |
|      Defendants. ) | |
| _____) | |

## <u>CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND</u>

### INTRODUCTION

1.     This is an action brought on behalf of individuals who are current and former delivery drivers or "distributors" of Defendants Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries Distribution, LLC (together, "Bimbo" or "Defendants") challenging the unlawful misclassification of them as independent contractors instead of employees. The above-named Plaintiffs assert claims under the Fair Labor Standards Act on behalf of themselves and all others similarly situated across New England, and under New Hampshire law on behalf of all those who performed work for Defendants in the State of New Hampshire, seeking remedies for statutory and common law violations resulting from this misclassification.

**PARTIES**

2.      Plaintiff David Camp is an adult resident of Swanzey, New Hampshire.  Since approximately 1999, Camp has delivered breads and baked goods on behalf of Defendants in New Hampshire. During the relevant time, he was Defendants' employee as that term is defined in N.H. Rev. Stat. § 275:42 and the FLSA.

3.      Plaintiff Keith Hadmack is an adult resident of Royalston, Massachusetts.  Since approximately 2010, Hadmack has delivered breads and baked goods on behalf of Defendants in New Hampshire. During the relevant time, he was Defendants' employee as that term is defined in N.H. Rev. Stat. § 275:42 and the FLSA.

4.      The above-named Plaintiffs bring this action on their own behalf and on behalf of all similarly-situated individuals.

5.      Defendant Bimbo Bakeries USA, Inc. is a corporate entity with its headquarters in Horsham, Pennsylvania.  Defendant Bimbo Bakeries USA, Inc. conducts business through distribution facilities in New Hampshire, among other states.

6.      Defendant Bimbo Foods Bakeries Distribution, LLC is corporate entity with its headquarters in Horsham, Pennsylvania.  It conducts business through distribution facilities in New Hampshire, among other states.

7.      Defendants are engaged in interstate commerce and employ individuals engaged in interstate commerce and are therefore covered by the FLSA, and they are "employers" as that term is defined in N.H. Rev. Stat. § 275:42,

## JURISDICTION AND VENUE

8.     The Court has original jurisdiction over the FLSA claims asserted in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331.

9.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (c), because both Defendants conduct business in New Hampshire and are subject to personal jurisdiction in this District.

## FACTS

11.     The business of Defendants and their affiliates consists of manufacturing, delivering, and selling breads and baked goods to grocery stores and other outlets across the United States under the brand names Sara Lee, Nature's Harvest, and others.

12.     Defendants and their affiliates operate out of at least three terminals in New Hampshire located in Hooksett, Lebanon, and Keene.

13.     Defendants and their affiliates use approximately fifty individuals within New Hampshire to deliver these products and stock the shelves at certain stores.

14.     These individuals, such as Plaintiffs Camp and Hadmack, are designated as independent contractors, as opposed to employees of Defendants. They are referred to by Defendants as Distributors ("Distributors").

15.     Bimbo asserts on its website that it is the "[o]nly commercial bakery manufacturer to serve all 50 states," and that it is "a leader in the baking industry, known for its category leading brands, innovative products, freshness and quality," and that it "operates more than 60

bakeries, employs more than 22,000 associates and distributes products through 11,000 sales routes throughout the United States."

16.     Plaintiffs and other Distributors deliver Defendant's baked goods and other Bimbo products to retailers and other customers, thereby providing an integral service to the baked goods business of Bimbo and its affiliates.

17.     On a typical week, Distributors such as the named Plaintiffs work at least forty hours per week delivering the baked goods for Defendants.  This work mainly consists of driving vehicles to stores within a territory designated by Bimbo, delivering Bimbo's products to these stores, and arranging the products on the shelves according to Bimbo's display standards.  The duties of Plaintiffs and other Distributors entail, at least in part, driving vehicles weighing less than 10,000 pounds because, for example, Plaintiffs and others often visit stores in their personal vehicles to drop off small orders of products and to arrange displays.

18.     Defendants treat Distributors as independent contractors, claiming that they are not entitled to the protections of state and federal employment laws.

19.     In addition, the use by Defendants of Distributors allows Defendants to reduce their normal business expenses, and to reduce the burdens on their employees, and to shift those burdens to Distributors without additional compensation and by deducting amounts from the Distributors pay. What about deductions?

20.     In order to work for Defendants, Plaintiffs and other Distributors were required to pay a substantial sum of money to purchase purported "Distribution Rights" and then enter into a "Distributor Agreement" with Defendants.  Most Distributors finance these purchases through loans facilitated by Defendants.

21.     For example, in approximately 1999 Plaintiff Camp executed a Distributor Agreement with Defendants' predecessor entity.  Plaintiff Hadmack entered into a similar Distributor Agreement in approximately 2010.

22.     The terms and conditions of each Distributor's Distributor Agreement are the same in all material respects.

23.     The Distributor Agreements are adhesion contracts drafted exclusively by Defendants.  Defendants do not negotiate the material terms of the Distributor Agreements with the Distributors, who are required to sign the agreements on a "take-it-or-leave-it" basis.  The Distributor Agreements purport to classify the Distributors as "independent contractors," even though they are employees pursuant to N.H. Rev. Stat. § 275:42 and the FLSA.

24.     Through the Distributor Agreements and other policies, Defendants have the right to control, and in fact exercise substantial control over the work performed by the Distributors.

25.     The control retained and exercised by Defendants includes, but is not limited to, the fact that Defendants:

a.      Employ managers who have supervisory and disciplinary authority over the Distributors.

b.      Determine the prices for all food products, negotiate those prices directly with retail outlets without Plaintiffs' involvement; require the Distributors to comply with its policies and procedures governing, among other things, the ordering of products, the frequency of deliveries and removal of stale product, and the manner in which delivery drivers must conduct themselves.

c.      Require Distributors to display product according to its requirements, and travel to stores and other retail locations to review displays to ensure Distributors' compliance with these policies.

d.      Require Distributors to obtain its express, prior approval before selling their routes or substituting another driver for their route.

e.      Prohibit the Distributors from exercising independent business judgment regarding the services they perform and the locations at which they perform these services.  For example, Distributors are prohibited from discontinuing deliveries to certain stores, even if the deliveries are no longer profitable.

f.      Prohibit Distributors from participating in activity considered competitive to Defendants and their affiliates.

26.      Through the Distributor Agreements, Defendants require Distributors to pay to secure employment or continue in employment.  For example, Plaintiffs and class members were required to pay thousands of dollars for the purported right to purchase a territory, or route, in order to begin work for Defendants.

27.      Defendants also deduct various amounts from the pay of Plaintiffs and other Distributors.  For example, Defendants make substantial deductions from Distributors' pay for "loan" payments related to the purchase of the Distribution Rights, insurance premiums, and numerous other charges.

28.      The Distributors and Defendants are engaged in the same usual course of business: the sale and distribution of baked goods.

29.      The Distributors are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as the services they provide to Defendants. Based on all the hours that Defendants require Plaintiffs to spend making deliveries and servicing their territories, there is little or no time left for Plaintiffs to make deliveries for any other company besides Defendants. In addition, Defendants restrict Distributors from engaging in various activities that could be "competitive" to Defendants. As a result, the Plaintiffs and Distributors are economically dependent on Defendants.

30.      Defendants also require Plaintiffs and other Distributors to assume many of Defendants' general business expenses. For example, Defendants require Distributors to pay for

gasoline and all vehicle lease, insurance, and maintenance expenses, and Defendants do not provide workers' compensation insurance to Plaintiffs and other Distributors.

31.     Distributors often work more than forty hours per week, and they do not receive any overtime premium or additional pay for those hours worked over forty.  For example, Plaintiff Camp often works six to seven days per week, usually 45-50 hours per week.

32.     Defendants' misclassification of its delivery drivers as independent contractors and the additional violations of New Hampshire law and the FLSA described above were willful and undertaken in bad faith.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

33.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of all individuals who, either individually or through a corporate entity, personally deliver or have delivered Defendants' products in New Hampshire pursuant to a Distributor Agreement.

34.     The members of the class are so numerous that joinder of all of them is impracticable, and treatment of a class action is the superior method to adjudicate the class members' claims.  Upon information and belief, there are approximately fifty members of the putative class.

35.     There are issues of law and fact common to all class members because Defendants have misclassified them as independent contractors rather than as employees and have unlawfully deprived them of the wage treatment and benefits accorded employees. These questions of law and fact predominate over any questions affecting only individual class members.

36.     The named plaintiffs and class counsel will fairly and adequately represent the interests of the class.

37.     Plaintiffs also assert claims under the FLSA on behalf of all similarly situated drivers in New England.

38.     Plaintiffs' FLSA claims should proceed as a collective action because Plaintiffs and other putative collective members worked pursuant to the common policy described above under which Defendants did not provide any overtime premium when Distributors worked more than forty hours per week, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I

## FAIR LABOR STANDARDS ACT–FAILURE TO PAY OVERTIME WAGES
## (INDIVIDUAL AND COLLECTIVE ACTION)

39.     Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

40.     Plaintiffs and the members of the proposed FLSA collective routinely worked in excess of forty (40) hours per workweek for Defendants.

41.     Defendants failed to pay Plaintiffs and the members of the putative FLSA collective at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

42.     Plaintiff and the members of the Plaintiff class are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).The failure of Defendants to compensate Plaintiff and the members of the Plaintiff class for overtime work as required by the FLSA was knowing, willful, intentional, and done in bad faith.

43.     Plaintiff and the members of the Plaintiff class are also entitled to liquidated damages equal to the amount of unpaid overtime compensation due to them under the FLSA,

pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

44.     Plaintiff and those similarly situated are also entitled to an award of reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**N.H. REV. STAT. § 275:48 - UNLAWFUL WITHHOLDING AND**
**DEDUCTIONS FROM WAGES**
**(INDIVIDUAL AND CLASS ACTION)**

45.     Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

46.     Defendants routinely diverted and withheld portions of Plaintiffs' and Distributors' wages**.**

47.     These deductions constituted a violation of in violation of N.H. Rev. Stat. § 275:48 because they were not for the benefit of Defendants' employees, nor were they supported by appropriate written authorization.

48.     Plaintiffs and members of the proposed Rule 23 class are entitled to recover the unpaid wages, including liquidated damages and attorney's fees, and costs pursuant to N.H. Rev. Stat. § 275:53.

**COUNT III**
**N.H. REV. ST. § 275:57 - REIMBURSEMENT OF EMPLOYEE EXPENSES**
**(INDIVIDUAL AND CLASS ACTION)**

49.     Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

50.     Defendants required Plaintiffs and other Distributors to incur expenses in connection with their employment.

51.    Defendants failed to reimburse Plaintiffs and Distributors for these expenses in violation of N.H. Rev. Stat. § 275:57.

## COUNT IV
## N.H. REV. ST. § 279:21 – FAILURE TO PAY OVERTIME WAGES
## (INDIVIDUAL AND CLASS ACTION)

52.    Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

53.    Plaintiffs and the members of the proposed Rule 23 class routinely worked in excess of forty (40) hours per workweek for Defendants.

54.    Defendants failed to pay Plaintiffs and the members of the proposed Rule 23 class at the rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours weekly as required by N.H. Rev. St. § 279:21.

55.    Plaintiffs and members of the proposed Rule 23 class are entitled to recover the unpaid wages, including liquidated damages and attorney's fees, and costs pursuant to N.H. Rev. Stat. § 279:29.

## COUNT V
## UNJUST ENRICHMENT
## (INDIVIDUAL AND CLASS ACTION)

56.    By misclassifying Plaintiffs and class members as independent contractors when they are employees under New Hampshire law and requiring them to pay to acquire Distributor Rights and to bear the employer's operating expenses in order to work, including payments for

Worker's Compensation and other insurances required to be furnished by employers, Defendants were unjustly enriched, to the detriment of Plaintiffs and class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs asks this honorable Court to enter the following relief:

a.   An Order granting certification of this case as an FLSA collective action and permitting notice to be sent to potential Opt-in Plaintiffs;

b.   An Order certifying a class of similarly situated individuals pursuant to Fed. R. Civ. P. 23;

c.   An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendants' misclassification, as described above;

d.   Restitution of the payments made by Plaintiffs in order to purchase their routes, and all other business expenses born by Plaintiffs on behalf of Defendants, in an amount sufficient to make Plaintiffs whole;

e.   Statutory liquidated damages, pursuant to New Hampshire law and the FLSA;

f.   Attorneys' fees and costs; and

g.   Such other legal and equitable relief as the Court deems just and proper.

DAVID CAMP and
KEITH HADMACK,
on behalf of themselves and all
others similarly situated,

By their Attorneys,


/s/ Christopher B. Coughlin
Christopher B. Coughlin (#17672)
Coughlin Law Group, PC
35 India Street Suite 3
Boston, MA 02110
617-758-8888
cbc@coughlinlawgroup.com


/s/ Harold Lichten
Harold L. Lichten, *pro hac vice* anticipated
Matthew W. Thomson, *pro hac vice* anticipated
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA  02116
(617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com