UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Camp and Keith Hadmack,
on behalf of themselves and all
others similarly situated,
    Plaintiffs

    v.                                  Case No. 18-cv-378-SM
                                          Opinion No. 2018 DNH 249
Bimbo Bakeries USA, Inc. and Bimbo
Foods Bakeries Distribution, LLC,
    Defendants

## **O R D E R**

Plaintiffs bring this wage and hour class action, asserting that defendants unlawfully treated them as independent contractors when, in fact, they were employees. As a consequence, say plaintiffs, they were wrongfully denied overtime pay, denied reimbursement for work-related expenses, and subjected to unlawful withholdings from their pay. Defendants deny plaintiffs allegations and move to dismiss their class action complaint, asserting that none of plaintiffs' claims states a viable cause of action. The motion is necessarily denied.

### Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts

set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

**Background**

Accepting the factual allegations set forth in plaintiffs' complaint as true - as the court must at this juncture - the relevant background is as follows. The Defendants, Bimbo Bakeries USA and Bimbo Foods Bakeries Distribution, are in the business of manufacturing, selling, and delivering baked goods under brand names that include Sara Lee and Nature's Harvest. Complaint (document no. 1) at para. 11. In New Hampshire, they operate out of terminals located in Hooksett, Lebanon, and Keene. Id. at para. 12. Defendants employ approximately 50 people to deliver their products and stock the shelves at various stores. Defendants designate those individuals, including the named plaintiffs, as "independent contractors," rather than "employees," and refer to them as "distributors." Id. at paras. 13-14.

According to plaintiffs, during a typical week they work at least forty hours delivering baked goods for defendants (plaintiff Camp, for example, alleges that he typically works six or seven days each week, for 45-50 hours). Id. at para. 31. Distributors' work consists mainly of driving to stores within their designated territories, delivering defendants' products, and arranging products on the store shelves according to defendants' display standards. Id. at para. 17. To secure

their employment with defendants, plaintiffs and other distributors were required to pay a substantial sum of money to purchase "distribution rights" and then enter into a "distribution agreement" with defendants. Based upon the limited record before the court, those agreements appear to have been between plaintiffs and defendant Bimbo Foods Bakeries Distribution (or its predecessor). See Exhibits A and B to Defendants' Motion to Dismiss (documents no. 16-2 and 16-3). Most distributors finance the acquisition of those distribution rights through loans facilitated by defendants. Complaint at para. 20. Often, defendants deduct loan payments directly from the pay provided to distributors. Id. at para. 27.

The distribution agreements classify the distributors as "independent contractors," but defendants retain (and exercise) substantial control over the work performed by the distributors. Id. at paras. 23-24. According to plaintiffs, that control includes maintaining supervisory and disciplinary authority over the distributors; determining the price at which distributors must sell all food products; dictating the frequency of deliveries, the manner in which deliveries are conducted, and the dates by which stale products must be removed; requiring express approval before a distributor may sell his or her route (or arrange for a substitute driver); prohibiting distributors

from exercising independent business judgment, such as determining when a store is no longer profitable and should no longer receive deliveries; and prohibiting distributors from participating in activities, or working for entities, that defendants consider competitive. Id. at para. 25.

Plaintiffs also assert that, even if they were not contractually prohibited from serving defendants' "competitors," given the substantial time required to make their deliveries on behalf of defendants, they would be precluded, as a practical matter, from making deliveries for any other companies. Consequently, distributors are not customarily engaged in an independently established trade, occupation, or business of the same nature as the services they provide to defendants. Id. at para. 29. Moreover, say plaintiffs, defendants require them to assume many of defendants' general business expenses, including the cost of fuel and lease payments for their delivery vehicles, as well as insurance and maintenance costs for those vehicles. Finally, defendants do not provide workers' compensation insurance for plaintiffs and the other distributors.

In their complaint, plaintiffs advance five claims against defendants, under both state and federal law: failure to pay overtime wages, in violation of the Fair Labor Standards Act;

unlawful withholdings and deductions from wages, in violation of N.H. Rev. Stat. Ann. ("RSA") 275:48; failure to reimburse plaintiffs for various employment-related expenses, in violation of RSA 275:57; failure to pay overtime wages, in violation of RSA 279:21; and unjust enrichment, in violation of New Hampshire common law. As noted above, defendants assert that none of those claims states a viable cause of action.

**Discussion**

I. <u>Claims Against Bimbo Bakeries USA</u>.

As a preliminary matter, defendants move to dismiss all claims against Bimbo Bakeries USA ("BBUSA"), asserting that plaintiffs have failed to specifically identify any alleged wrongdoing on its part. Instead, the complaint simply groups the named defendants together and routinely ascribes allegedly wrongful conduct to "defendants," without identifying which defendant engaged in which conduct. Moreover, defendants point out that BBUSA is not a party to either of the distribution agreements at issue in the case. Plaintiff David Camp executed his agreement with Bestfood Baking Distribution Company (not a party, but apparently the predecessor to one of the named defendants), and plaintiff Keith Hadmack executed his agreement with defendant Bimbo Foods Bakeries Distribution, Inc. Consequently, say defendants, the complaint fails to adequately

allege the factual predicate necessary to state any viable claims against BBUSA.  The court disagrees.

Plaintiffs' complaint is sufficient - albeit barely - to survive a motion to dismiss.  Plaintiffs' primary complaint is that they were improperly treated as independent contractors, rather than employees.  If they prevail on that claim, it will be necessary to determine which entity acted as their employer - that is, which entity exercised control over the details of the performance of plaintiffs' work and the means by which they performed that work.  At this juncture, the complaint adequately alleges that one or both named defendants may be liable as plaintiffs' "employer."  See generally Scott v. Bimbo Bakeries, USA, Inc., 2012 WL 645905 at *2 n.2 (E.D. Pa. Feb. 29, 2012) (citing cases).

If discovery reveals that is not the case, defendants are free to raise the issue again, in the context of a properly supported motion for summary judgment.

II. Plaintiffs' FLSA Overtime Claims.

Defendants assert that plaintiffs have failed to adequately plead sufficient facts to properly state a claim for overtime wages under the FLSA.  Specifically, they say that "to survive a

7

motion to dismiss an FLSA claim, a plaintiff must, at a minimum, specify a single workweek in which he or she worked at least forty hours and was not compensated for such time." Defendants' memorandum (document no. 16-1) at 11. To be sure, some courts have required such specificity in pleading. So, for example, the Court of Appeals for the Third Circuit has observed:

> The level of detail necessary to plead a FLSA overtime claim poses a more difficult question - one that has "divided courts around the country." Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013). Some courts have required plaintiffs to allege approximately the number of hours worked for which wages were not received. See, e.g., Jones v. Casey's Gen. Stores, 538 F.Supp.2d 1094, 1102-03 (S.D. Iowa 2008) (holding that a complaint alleging that the plaintiffs "regularly worked regular time and overtime each week but were not paid regular and overtime wages" was "implausible on its face" (quotation marks omitted)). Other courts have adopted a more lenient approach, holding that, "[w]hile Defendants might appreciate having Plaintiffs' estimate of the overtime hours worked at [the pleading stage]," a FLSA complaint will survive dismissal so long as it alleges that the employee worked more than forty hours in a week and did not receive overtime compensation. Butler v. DirectSat USA, LLC, 800 F.Supp.2d 662, 668 (D.Md.2011).

Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014).

In support of their view that a viable FLSA claim must identify at least one specific week during which a plaintiff worked more than 40 hours, defendants rely upon the court of appeals' opinion in Pruell v. Caritas Christi, 678 F.3d 10 (1st

Cir. 2012). In that case, the court affirmed the district court's dismissal of FLSA claims on grounds that they were insufficiently detailed, "although not by a large margin." Id. at 14.[1] In support of that decision, the court observed that the plaintiffs' complaint failed to "provide examples (let alone estimates as to the amounts) of such unpaid time for either plaintiff or describe the nature of the work performed during those times." Id.

More recently, the court distinguished its holding in Pruell and concluded that a complaint adequately set forth the essential elements of a viable FLSA claim despite its failure to identify a specific workweek during which each plaintiff worked more than 40 hours.

> In affirming the dismissal of a complaint raising similar allegations, our recent opinion in Pruell observed that "the amended complaint does not provide examples (let alone estimates as to the amounts) of such unpaid time for either plaintiff or describe the nature of the work performed during those times." 678 F.3d at 14. Defendants level a similar contention against this complaint, asserting that it fails to allege that plaintiffs engaged in compensable work with sufficient specificity.
>
> While we agree that some of the complaint's allegations straddle the line between the conclusory and the factual, the pleading contains enough

---

[1] The Pruell court vacated the district court's order dismissing the FLSA claims with prejudice and remanded the case to give plaintiffs an opportunity to file an amended complaint.

9

> substantive content to elevate the FLSA claims above
> the mere possibility of defendants' liability.  As
> discussed above, the complaint's gist is that because
> the employees' assigned tasks often need to be
> completed by certain times, and because of
> understaffing and lack of relief during meal and work
> breaks, BMC employees must frequently complete their
> regular working activities during their meal breaks or
> before and after their scheduled shifts.  For example,
> Manning and Williams, who worked as nurses, spent this
> time charting, performing administrative tasks,
> monitoring patients, and providing treatment. Rivers,
> a registered nurse, similarly used this time to assist
> patients who had difficulty sleeping.  McCarthy, an
> administrative assistant, spent her uncompensated time
> placing and answering phone calls, drafting
> correspondence, and filing paperwork.
>
> This work was essentially indistinguishable from work
> performed during the employees' regularly scheduled
> hours and "[s]uch work from [their] standpoint [was]
> fungible." Gotham Registry, 514 F.3d at 286.  The
> fact that this assertion is not accompanied by a
> detailed list of each and every activity the
> plaintiffs and their fellows performed without
> compensation does not mandate the complaint's
> dismissal. "Work is work, after all," id., and we see
> no reason to demand such exhaustive detail.

Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 45–46 (1st Cir. 2013) (emphasis supplied).  See also Gould v. First Student Mgmt., LLC, No. 16-CV-359-PB, 2017 WL 3731025, at *7 (D.N.H. Aug. 29, 2017) ("Thus, plaintiffs need not detail the specific number of hours beyond forty that they worked, the sum of overtime wages due, or the exact dates they worked overtime. Nor must plaintiffs keep careful records and plead their hours with mathematical precision.") (citations and internal punctuation omitted).  See generally Hall v. DIRECTV, LLC, 846

10

F.3d 757, 777 (4th Cir. 2017) ("[W]e emphasize that the standard we today adopt does not require plaintiffs to identify a <u>particular</u> week in which they worked uncompensated overtime hours. Rather, this standard is intended to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.' Thus, to state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.") (citations and internal punctuation omitted).

To the extent defendants' assert that plaintiffs' complaint is deficient because it fails to identify a specific workweek during which each plaintiff worked more than 40 hours without receiving overtime compensation, that view is inconsistent with circuit precedent. For that reason, defendants' motion to dismiss plaintiffs' FLSA claims is denied.

III. <u>Plaintiffs' State Statutory Claims</u>.

    A.   <u>Unlawful Withholdings and Deductions</u>.

In addition to their FLSA claims, plaintiffs also advance three state statutory claims. In the first, plaintiffs say defendants violated RSA 275:48 which, generally speaking, prohibits employers from withholding or diverting any portion of

an employee's wages unless authorized by law or by written agreement of the employee. Defendants move to dismiss asserting that: (1) plaintiffs are properly viewed as independent contractors, so RSA 275:48 does not apply to them; and (2) even if the statute does apply, it specifically permits the deductions identified by plaintiffs because plaintiffs provided written authorization for such deductions.

In response, plaintiffs contend that they are employees, subject to the provisions of RSA 275:48 - an issue that cannot be resolved at this preliminary stage of the litigation. Moreover, say plaintiffs, because defendants are attempting to avail themselves of one or more exceptions to that statute's general prohibition, defendants will bear the burden of proving that such an exception (or exceptions) apply. Finally, say plaintiffs, the statute only permits "deductions for a lawful purpose." RSA 275:48, I(b). And, the deductions at issue in the case are, according to plaintiffs, unlawful.

Again, the factual allegations set forth in plaintiffs' complaint are, if accepted as true, sufficient to plausibly state the essential elements of a viable claim under RSA 275:48. At this juncture, they need do no more.

B.  <u>Reimbursement of Employee Expenses</u>.

Next, plaintiffs assert that defendants violated RSA 275:57, which provides:

> An employee who incurs expenses in connection with his or her employment and at the request of the employer, except those expenses normally borne by the employee as a precondition of employment, which are not paid for by wages, cash advance, or other means from the employer, shall be reimbursed for the payment of the expenses within 30 days of the presentation by the employee of proof of payment.

N.H. Rev. Stat. Ann. 275:57, I.  Defendants assert that even if plaintiffs are properly viewed as employees and are, therefore, subject to the provisions of that statute, they have been fully reimbursed for all such expenses pursuant to the terms of their distribution agreements.

Whether plaintiffs have been properly and fully reimbursed for work-related expenses in accordance with RSA 275:57 would seem to be a disputed factual question.  At a minimum, whether defendants could <u>lawfully</u> contract to shift the burden of assuming work-related expenses to plaintiffs is an issue better resolved at summary judgment, with the benefit of a complete record.  <u>See generally</u> <u>Gennell v. FedEx Corp.</u>, No. 05-cv-145-PB, 2014 WL 1091148 (D.N.H. Mar. 19, 2014).

C.  <u>Overtime Pay Pursuant to New Hampshire Law</u>.

In their third state statutory claim, plaintiffs assert that defendants violated the provisions of RSA 279:21 by failing to pay them overtime wages for those weeks during which plaintiffs worked in excess of forty hours. That statute provides that "Unless otherwise provided by statute, no person, firm, or corporation shall employ any employee at an hourly rate lower than that set forth in the federal minimum wage law, as amended." Defendants assert that "the FLSA is the exclusive remedy for enforcement of rights created by the FLSA" and, therefore, plaintiffs' state statutory claims for overtime are preempted. Defendants' Memorandum at 17 (citing <u>Roman v. Maietta Constr., Inc.</u>, 147 F.3d 71, 77 (1st Cir. 1998)).

But, the holding in <u>Roman</u> may not sweep as broadly as defendants suggest. For example, the United States District Court for the District of Maine has observed that <u>Roman</u> stands for a far narrower proposition of law:

> National also contends that this Court must grant summary judgment on Bolduc's claim brought under 26 M.R.S.A. § 664 because the FLSA precludes Bolduc's claim under the state overtime law. Citing <u>Roman v. Maietta Constr., Inc.</u>, 147 F.3d 71 (1st Cir. 1998), National argues that Bolduc's claim under the FLSA precludes his ability to bring a claim under state law. National mischaracterizes the <u>Roman</u> decision. The Court in <u>Roman</u> forbid the plaintiff recovery under

14

> section 664 of the M.R.S.A. for overtime violations
> when he had already received compensation under the
> FLSA for this claim. Roman, 147 F.3d at 74 (noting
> with approval that "[t]he trial court ruled that under
> both the FLSA and state law, [plaintiff] was entitled
> to liquidated damages in the amount of unpaid
> overtime. . .."). Thus, the Roman court held that a
> plaintiff is not entitled to a double recovery when he
> pleads both federal and state claims for the same
> overtime pay. It did not hold that a claim made for
> over overtime under the FLSA precludes a claim for
> overtime under state law.
>
> Recovery under both a federal and state statute for
> the enforcement of the same right is clearly
> prohibited. However, parties are entitled to pursue
> claims under both state and federal law to vindicate
> the same right unless the federal law preempts the
> state claim.

Bolduc v. Nat'l Semiconductor Corp., 35 F. Supp. 2d 106, 117 (D. Me. 1998).

Moreover, as plaintiffs point out, the test for whether a person is an "employee" differs under state and federal law. Consequently, it is conceivable that plaintiffs may meet the definition of "employee" under one statute, and fail to meet that definition under the other. At this stage, it is simply premature to make such a determination.

Defendants have failed to demonstrate that, as a matter of law, plaintiffs are precluded from pursuing their claims under New Hampshire's statute governing wages and overtime. And,

while it is true that plaintiffs cannot recover twice for the same injuries under federal and state overtime statutes, plaintiffs are plainly entitled to plead their claims for relief in the alternative. See generally Maccabees Mut. Life Ins. Co. v. Perez-Rosado, 641 F.2d 45, 46 (1st Cir. 1981).

IV.  Common Law Unjust Enrichment.

Finally, defendants move to dismiss plaintiffs' common law claim of unjust enrichment. "The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity." Pella Windows and Doors v. Faraci, 133 N.H. 585, 586 (1990). To state a viable claim, a plaintiff must plausibly allege that the defendant was enriched at the plaintiff's expense through either: (1) wrongful acts; or (2) "passive acceptance of a benefit that would be unconscionable to retain." Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001). Importantly, however, "[o]ne general limitation is that unjust enrichment shall not supplant the terms of an agreement. It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand." Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210-11 (2009) (citing 42 C.J.S. Implied Contracts § 38 (2007)).

Defendants assert that because their relationship with plaintiffs is governed by a written contract, plaintiffs are precluded from pursuing any claim for unjust enrichment. In other words, says defendants, plaintiffs' sole avenue of relief is a potential breach of contract claim. Plaintiffs, on the other hand, say the underlying contracts between them and defendants, which require them "to buy their jobs and bear the employer's expenses (such as worker's compensation insurance, which must be supplied by an employer) are likely void and unenforceable as against public policy." Plaintiffs' Memorandum (document no. 17) at 22. If those contracts are, as plaintiffs claim, unenforceable, a claim for unjust enrichment is likely viable. As the New Hampshire Supreme Court has observed, "Unjust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract." Clapp, 159 N.H. at 211 (citations omitted).

And, of course, at the pleading stage, a plaintiff is permitted to advance "as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). See also Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) ("Although the [defendant] is correct that damages for breach of

contract and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage.") (citations omitted).

## Conclusion

For the foregoing reasons, as well as those set forth in plaintiffs' memorandum, defendants' motion to dismiss (document no. 16) is denied. Many of the issues raised by defendants are more appropriately resolved in the context of a properly supported motion for summary judgment, when the full extent of the evidentiary record is clear.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 17, 2018

cc: Harold L. Lichten, Esq.
    Matthew Thomson, Esq.
    Christopher B. Coughlin, Esq.
    William D. Pandolph, Esq.
    Michael J. Puma, Esq.
    Siobhan E. Mee, Esq.