UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DAVID CAMP and KEITH HADMACK; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIMBO BAKERIES USA, INC. and BIMBO FOODS BAKERIES DISTRIBUTION, LLC, <br><br> Defendants. | CIVIL ACTION NO. 1:18-CV-00378-SM <br><br> *ELECTRONICALLY FILED* |

**PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS
AND INCORPORATED MEMORANDUM OF LAW**

In this wage and hour class action, the named Plaintiffs were drivers who exclusively performed delivery of breads and baked goods for Defendants Bimbo Bakeries USA, Inc. and Bimbo Bakeries Distribution, LLC ("Defendants" or "Bimbo").  Defendants determine the territory in which the Plaintiffs and other drivers work and the prices for all products that are delivered, and require Plaintiffs and other drivers to comply with specific requirements regarding the frequency of deliveries, removal of stale product from stores' shelves, and the manner in which products are displayed at each store.  Though Defendants exercise this substantial control over their delivery drivers' work and Plaintiffs do not operate anything resembling an independent business, Defendants classify all drivers as "independent contractors" as opposed to employees.  Plaintiffs have filed suit under state and federal wage laws alleging that they were

1

misclassified as independent contractors and that Defendants violated various provisions of the Fair Labor Standards Act (FLSA) and the New Hampshire wage statutes.

In responding to Plaintiffs' Complaint, Bimbo has asserted a baseless "unjust enrichment" counterclaim against each named Plaintiff. This counterclaim seeks to recoup amounts from Plaintiffs' unpaid wages if they are successful in this action because, according to Bimbo, it would have paid Plaintiffs less had it known that they were actually "employees." Dkt. 48, Counterclaim at ¶¶ 37-42. Defendants' counterclaims are subject to dismissal because the alleged facts create no possibility that Defendants will "sustain recovery under some viable legal theory[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007) (internal quotation marks omitted).

Specifically, the counterclaims fail for four primary reasons.

First, counterclaims of this nature that seek to "recoup" or "offset" a plaintiff's award of unpaid wages are prohibited by the FLSA and similar wage statutes. Courts have also held that state law counterclaims are preempted by the FLSA because the FLSA remedial scheme "strongly counsels against judicially engrafting additional remedies" in favor of employers, and therefore "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect." Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 144 (2nd Cir.1999).

Second, the "unjust enrichment" counterclaims have no basis in law and do not state a claim for relief, as they do not allege any "unconscionable" or inequitable result. As disclosed by the pleadings, Plaintiffs merely signed agreements drafted unilaterally by Defendants and worked pursuant to those agreements; if Defendants are later found to have violated the FLSA and the New Hampshire wage laws because they created a scheme to misclassify drivers as independent contractors to evade enforcement of wage and hour laws, Defendants' resulting

"loss" is solely attributable to their own actions, not to some unjust actions of the Plaintiffs. Moreover, unjust enrichment requires that a party has obtained a benefit *at the expense of the other*, see Cohen v. Frank Developers, Inc., 118 N.H. 512, 518, 389 A.2d 933, 937 (1978), and therefore Defendants cannot recoup Plaintiffs' "tax deductions" and other amounts that did not cause any direct loss to Defendants.

Third, because Defendants' counterclaim has no basis in law, it is blatantly retaliatory and must be dismissed. Indeed, Defendants acknowledge through their pleadings that *but for the Plaintiffs asserting wage claims in this action*, Defendants would not be pursuing these counterclaims. Thus, the counterclaims violate the anti-retaliation provisions of the FLSA and the New Hampshire wage statute, and the counterclaims serve no purpose but to discourage other workers from participating in this action or otherwise asserting their rights under state and federal wage laws.

Fourth, the counterclaims must be dismissed because they rely upon uncertain and contingent events that have not yet occurred to support the alleged claim for damages. The claims are not ripe, and Defendants have no standing to assert the counterclaims in this action.

For these reasons, and as discussed in greater detail below, Defendants' unjust enrichment counterclaims should be dismissed.

## I.   BACKGROUND

Plaintiffs brought this action on behalf of themselves and other Bimbo delivery drivers who worked in New England. Plaintiffs allege that, although they have been classified as independent contractors, they were actually employees under the FLSA and the New Hampshire wage laws. Plaintiffs seek to recover various forms of unpaid wages arising from Defendants'

failure to pay them any overtime pay when they work more than forty hours per week, Defendants' failure to reimburse them for work-related expenses, and Defendants' practice of making unlawful deductions from their wages. See Complaint, Dkt. 1, at ¶¶ 39-56.

Bimbo has now responded to the Complaint by filing an Answer that contains an "unjust enrichment" counterclaim against the Plaintiffs. Bimbo describes the counterclaim as follows:

> [F]f the Court finds that Counterclaim Defendants [i.e., Plaintiffs Camp and Hadmack] were employees of [Defendants] …, it should find that Counterclaim Defendants were enriched as a result of their status as independent contractors.

See Dkt. 48, Counterclaim at ¶ 41. Defendants argument is that had they known that Plaintiffs were really employees under New Hampshire wage laws or the economic realities test of the FLSA, they would have paid Plaintiffs less; thus, if there is later a finding that Plaintiffs were employees, Defendants should be able to "offset any award of wages" by recouping amounts that they would not have paid to Plaintiffs had they treated them as "employees" all along. Id. at ¶ 42. Specifically, Defendants seek to recover the following categories of alleged "damages:" amounts earned by Plaintiffs through performance of their work for Defendants (i.e,, the piece-rate earned for each product delivered and any "advertising payments" advanced to plaintiffs); "the profits generated from the sale and/or partial sale of their distribution rights to other IBPs;" and unidentified "tax deductions" taken by Plaintiffs due to Defendants' unilateral decision to treat them as independent contractors and pay them pursuant to an IRS Form 1099. Id.

It is clear from Defendants' pleadings that but for Plaintiffs decision to assert wage claims in this action and enforce their rights under the FLSA and the New Hampshire wage laws, Defendants would not assert any counterclaims against them; indeed, Defendants' entire counterclaim is actually contingent on Plaintiffs first *succeeding* in this action and establishing

4

their status as "employees," and only then (according to Defendants) have they suffered any damages that they seek to recover.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss, a complaint or counterclaim only survives if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id., at 678. In the instant case, Defendants' counterclaims fail to state a plausible claim for relief, and therefore they must be dismissed pursuant to Rule 12(b)(6).

## III. ARGUMENT

### 1. Bimbo's Counterclaim to "Offset" Plaintiffs' Unpaid Wages is Prohibited by the FLSA

Bimbo's counterclaim is invalid as a matter of law in an FLSA action or an action to enforce the New Hampshire wage laws.

As courts have long held, "public policy disfavors counterclaims for setoff and unjust enrichment in FLSA litigation." Saenz v. Rod's Prod. Servs., LLC, 2015 WL 12866986, at *8 (D.N.M. June 23, 2015); Martin v. PepsiAmericas, Inc., 628 F.3d 738, 741 (5th Cir. 2010) (noting that the Fifth Circuit has held "that set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions"); Perez v. S. Fla. Landscape Maint., Inc., 2014 WL 293774, at *3 (S.D. Fla. Jan. 23, 2014) (observing that the claim for setoff would "invariably cause Plaintiff not to receive the overtime payments to which he was allegedly entitled under the FLSA," and that "this type of set-off is not an appropriate

affirmative defense in a FLSA case"); Saarela v. Union Colony Protective Servs., Inc., 2014 WL 3408771, at *5 (D. Colo. July 14, 2014) ("…[M]ost courts considering the issue have generally agreed that setoffs and recoupments are disfavored in FLSA suits.") (internal quotation marks and citation omitted); Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) ("breach of contract and unjust enrichment counterclaims for set-offs are not permitted in this FLSA action"), report and recommendation adopted, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012).

The reason for this rule has been described by the Fifth Circuit:

> The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court…. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. … Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor.

Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974).[1]

State wage laws also prohibit the type of "offset" defense that Defendants pursue here. Defendants argue they should be permitted to "recoup" and "offset" the potential damages

---

[1] The only narrow exception to the rule prohibiting set-offs in FLSA cases appears in instances where employers have erroneously provided the employees with wage compensation to which they were not entitled to under the terms of their established agreements. See Martin v. PepsiAmericas, Inc., 628 F.3d 738, 742 (5th Cir. 2010). For example, in Singer v. City of Waco, Tex., 324 F.3d 813 (5th Cir. 2003), the court found that because the employer had already paid the value of the overtime the plaintiff employees were owed in excess of the employees' earned wages during previous pay periods, that additional payment could be set off against the value of the wages the employees were entitled to in subsequent pay periods. Id. at 828. This exception does not apply here because Defendants do not seek to "offset" amounts that they claim were pre-paid to Plaintiffs as overtime wages. See Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) (declining to apply Singer where the amount "sought as a set-off do[es] not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled"), report and recommendation adopted, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012).

6

awarded to Plaintiffs in this matter because had Plaintiffs been treated as employees, they would have been paid less. The Massachusetts Supreme Judicial Court has rejected identical theory in interpreting its own wage laws. In Somers v. Converged Access, Inc., 454 Mass. 582, 911 N.E.2d 739 (2009), the court addressed a defendant's attempt to offset its liabilities on the grounds that "had it realized that it would be violating [the Wage Act] by hiring the plaintiff as an independent contractor, it instead would have hired him as an employee and paid him a lower hourly wage than the hourly rate it paid him as an independent contractor." Id. at 749. The court rejected such a defense. Id. at 749-50. The court observed that such rule would undermine the entire purpose of the wage statute, holding that "[w]ere employers who violated the statute permitted a 'safe harbor' that allowed them to demonstrate that they would have paid the employee less had they known he or she was not an independent contractor, there would be no financial incentive to ensure employer compliance, and employees would be left with no meaningful protection from misclassification [as independent contractors]." Id. at 749. The New Hampshire wage statute similarly must be interpreted "to effectuate the broad purpose of protecting employees," Galloway v. Chicago-Soft, Ltd., 142 N.H. 752, 759, 713 A.2d 982, 986 (1998), and would also prohibit Defendants' "offset" argument.

     Bimbo's attempt to "recoup" the damages that it owes under the FLSA directly from the employees is nothing more than a disguised attempt to indemnify itself for its own violations of the FLSA. Courts have repeatedly rejected attempts by employers that seek indemnification from their employees for their violations of the FLSA. See Bailon v. Seok AM No. 1 Corp., 2009 WL 4884340, *3 (W.D. Wash. Dec. 9, 2009) (dismissing counterclaims brought by employer against one of the plaintiffs, reasoning that "[t]o rule otherwise would frustrate Congress' purpose in enacting the FLSA, since an employer who believed that any violation of

the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute"); Villareal v. El Chile, Inc., 601 F.Supp.2d 1011, 1014-16 (N.D. Ill. Feb. 25, 2009) (dismissing indemnity counterclaim brought by employer against employee in an FLSA action).[2]

## 2. Bimbo's Unjust Enrichment Counterclaim is Baseless

The basic requirements of a claim of unjust enrichment under New Hampshire law have been described as follows:

> Unjust enrichment is an equitable remedy that is available when an individual receives a benefit which would be unconscionable for him to retain." Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669, 62 A.3d 754 (2013) (internal quotation marks and emphasis omitted). That is, "a defendant is liable if equity and good conscience requires" liability because "one shall not be allowed to profit or enrich himself at the expense of another contrary to equity." Am. Univ. v. Forbes, 88 N.H. 17, 183 A. 860, 862 (1936); see also Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210, 977 A.2d 1021 (2009).

Walbridge v. Ne. Credit Union, 299 F. Supp. 3d 338, 347 (D.N.H. 2018). Bimbo's counterclaim states that should the Plaintiffs succeed in their claims that they were employees of Bimbo, they will have been unjustly enriched when Bimbo paid them certain amounts under their

---

[2]  For additional FLSA case law dismissing counterclaims and third-party claims for indemnification in lawsuits to recover unpaid wages, see Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc., 99 F. Supp. 2d 219, 221 (D. Conn. 2000) (holding that indemnification clause in union contract was void in regard to plaintiffs' FLSA action, and dismissing indemnification counterclaim under Rule 12(b)(6)); Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc., 2008 WL 1820830, at *10 (W.D.N.C. Apr. 21, 2008) ("It would indeed be unconscionable for an employer to escape liability for unlawful labor practices by having the employee agree to indemnify the employer for FLSA violations" and "to hold otherwise would be to gut the remedial nature of the FLSA."); Emanuel v. Rolling in the Dough, Inc., 2010 WL 4627661, at *4 (N.D. Ill. Nov. 2, 2010) ("Every case to consider the issue of indemnification in the FLSA context has reinforced that to allow employers to seek indemnification from their employees for FLSA violations would frustrate the very purpose of the statute.").

8

"agreement" to work as independent contractors. This claim is legal insufficient and fails as a matter of law.

First, Defendants have not set forth any facts supporting their assertion that they have suffered any loss that is "unconscionable." It is not enough for Defendants to merely state that if they had known Plaintiffs were employees, they would have paid them less, and therefore they have some type of "moral claim for reimbursement;" rather, "there must be some specific legal principle or situation which equity has established or recognized" supporting Defendants' claim that Plaintiffs purported "enrichment" was unjust. DesRoches v. Potter, 2009 WL 1240726, at *2 (D.N.H. May 5, 2009) (internal quotation marks and citations omitted). However, the relevant legal principles supporting the FLSA and the New Hampshire wage laws demonstrate that Plaintiffs have *not* acted unconscionably or unjustly. Though Defendants allege that Plaintiffs "agreed" to be independent contractors and have now filed suit challenging their misclassification, this is not "unjust." The protections of the wage and hour laws cannot be waived by contract, nor can Defendants succeed in minimizing their liability under the statutes by merely alleging that Plaintiffs "agreed" to the arrangement that is later found to have violated the statutes.³ Plaintiffs' alleged "agreement" to work as non-employees has no legal significance, as it is the "economic realities" of their relationship with Defendants, and not the

---

³ "We have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945); see D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114-116, (1946); Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944); Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, at 577 (1974)." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740, 101 S. Ct. 1437, 1445, 67 L. Ed. 2d 641 (1981).

9

terms used by the parties, which is dispositive on the question of employee status.[4] Thus, Plaintiffs' purported "agreement" to work as independent contractors did not violate equitable principles, but rather it is irrelevant and legally insignificant. If Defendants are ultimately found liable for unpaid wages, it will be because of their own failure to comply with the clear requirements of the relevant wage statutes, not because of some prior "agreement" or unconscionable act of Plaintiffs.

In addition, through its counterclaims, Bimbo seeks to recover "tax deductions" and amounts earned when Plaintiffs sold portions of their "distributorships" to third parties. Counterclaims at ¶ 42. In order to support a claim of unjust enrichment, a party must have received a benefit to the detriment of the other. See Cohen v. Frank Developers, Inc., 118 N.H. 512, 518, 389 A.2d 933, 937 (1978). There is no allegation that Plaintiffs receipt of a tax deduction or funds from an unrelated third party caused a loss to Defendants. There is no equitable claim to recover these funds allegedly received by Plaintiffs from parties other than Defendants.

---

[4] See Dole v. Snell, 875 F.2d 802, 804 (10th Cir. 1989) ("Courts have adopted an expansive interpretation of the definitions relating to employment status under the FLSA, in order to effectuate its broad remedial purpose…Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of "employee" or "independent contractor.") (citations omitted); Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1315 (5th Cir. 1976) certiorari denied 97 S.Ct. 82 (1976), citing United States v. Silk, 331 U.S. 704, 715 (1947) ("We reject both the declaration in the lease agreement that the operators are 'independent contractors' and the uncontradicted testimony that the operators believed they were, in fact, in business for themselves as controlling FLSA employee status. Neither contractual recitations nor subjective intent can mandate the outcome in these cases. Broader economic realities are determinative.").

### 3. Bimbo's Baseless Counterclaim Should be Dismissed Because it is Unlawful Retaliation

The FLSA's anti-retaliation provision states that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). Federal courts have explained that this statute "must be interpreted broadly" in order to fulfill its purpose, Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) (collecting cases), which is "to prevent fear of economic retaliation by an employer against an employee who chose to voice … a grievance…." See Williamson v. General Dynamics Corp., 208 F.3d 1144, 1151 (9th Cir. 2000), quoting Lambert, 180 F.3d at 1004.[5]

Courts have routinely held that an employer's filing of baseless counterclaims against the employee in response to the employee's FLSA lawsuit constitutes actionable retaliation under the FLSA. A key case on point is Fernandez v. Kinray, Inc., 2014 WL 12778829, at *3 (E.D.N.Y. Feb. 5, 2014). There, an employer sought to enforce an indemnification agreement against its employees in an action where those same workers asserted FLSA and New York Labor Law claims. The court found that the provisions of the FLSA evinced an obvious desire to encourage workers to bring suits in the face of employer resistance, and therefore a more active intervention was required at the motion to dismiss phase in order to protect the employees from

---

[5] In Mitchell v. Robert DeMario Jewelry, Inc., the Supreme Court explained the critical importance of the FLSA's anti-retaliation provision:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.... [I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

361 U.S. 288, 292-93 (1960).

11

the expense of defending against meritless counterclaims. Id. at *7. As a result, the court dismissed the claim, stating "I reject the notion that the policy considerations underlying the FLSA do not apply at this early stage of the litigation… The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims." Id.; see also Abdul-Rasheed v. KableLink Comm., LLC, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25, 2013) (finding that allowing defendant to enforce an indemnity provision in a misclassification case "would impose a chilling effect that would defeat the remedial purpose of the FLSA").

While the Fernandez court used these policy considerations to simply dismiss the employer's counterclaims, other courts gone even further and held that an employer's actions in filing counterclaims against workers who have filed wage and hour suits constitute impermissible retaliation worthy of damages. See, e.g., Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008) (finding employer's lawsuit alleging fraud was filed with a retaliatory motive and without a reasonable basis in fact or law, and was an actionable adverse employment action under FLSA, noting "a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee.'"); Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013) ("The court disagrees with Defendants and holds that the filing of a baseless pleading can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation."); Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827 (N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim."); Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827

12

(N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim."); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) ("Bad faith or groundless counterclaims … against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect."); Munroe v. Parts Base, Inc., 2008 WL 4998777 (S.D. Fla. Nov. 20, 2008) ("By suing an employee who files charges . . . an employer can place its employees on notice that anyone who engages in subjecting himself to the possibility of a burdensome lawsuit.").

New Hampshire state law also prohibits retaliation by employers for bringing state wage claims forward either administratively or in court using virtually the same language as that of the FLSA's anti-retaliatory provision.

> "No employer shall harass, abuse, intimidate, discharge, threaten, or otherwise discriminate against any employee regarding compensation, terms, conditions, location, or privileges of employment because…[t]he employee, in good faith, participates, verbally or in writing, in an investigation, hearing, or inquiry conducted by any governmental entity, including a court action, which concerns allegations that the employer has violated any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States."

N.H. Rev. Stat. Ann. § 275-E:2(I)(c). Courts have recognized that an employer's baseless counterclaims are barred by similar state laws that share the same remedial purpose as the FLSA. See Gustafson v. Bell Atlantic Corp., 171 F.Supp.2d 311, 328 n. 8 (S.D.N.Y. 2001); Villareal v. El Chile, Inc., 601 F.Supp.2d 1011, 1017 (N.D. Ill. 2009) ("As with the FLSA, the [Illinois Minimum Wage Law's] statutory goals would be undermined by diminishing the employer's compliance incentives if an employer were permitted to seek indemnity or contribution from its employees for statutory violations.") (ordering dismissal of indemnity counterclaims under Rule 12(b)(6)).

Here, Bimbo has filed a counterclaim against the Plaintiffs in direct response to their FLSA and New Hampshire Labor Law complaints brought to vindicate their statutory rights and, as discussed above, there is no factual basis or precedent for an "unjust enrichment" counterclaim permitting Defendants' to offset the potential damages awarded in this case. These claims were baseless and served a purely retaliatory purpose, as the counterclaim has been filed *expressly* because the Plaintiffs brought this action to assert their wage rights under the FLSA and New Hampshire Labor Law, as Bimbo only seeks damages "if the Court finds that Counterclaim Defendants should have been classified as employees of BFBD and/or its affiliates." Counterclaims, Dkt. 48, at ¶ 42. Therefore, the Court should dismiss Bimbo's counterclaims where they constitute unlawful retaliation.

### 4. Bimbo's Counterclaim is Not Ripe, and It Does not Have Standing

In order for claims to be justiciable under Article III, the controversy must first be ripe. See Marchi v. Board of Coop. Educ. Servs. of Albany, 173 F.3d 469 at 478 (2d Cir.1999) ("ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts") (internal quotations omitted). "The issue of ripeness turns on 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990), quoting Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission, 461 U.S. 190, 201 (1983). "Perhaps the most important consideration in determining whether a claim is ripe for adjudication is the extent to which the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." Id. (internal quotation marks and citations omitted). Defendants' counterclaims are not ripe.

Courts often find that a claim is not ripe if it is wholly contingent on a judgment being entered or some other action by a court, and is therefore predicted on events that have not yet occurred.  In Lincoln House, Inc., the First Circuit held that a claim was not "ripe" where it was "wholly contingent upon Lincoln's success in a separate case…, making Lincoln's claim of damages, at this point, purely speculative, and not ripe for resolution."  Lincoln House, 903 F.2d at 847.  Similarly, in Iglesia Cristiana El Buen Samaritano, Inc. v. Guardian Servs., LLC, the court dismissed an unjust enrichment counterclaim because it was not ripe.  The court observed that, "the defendants have not alleged that they have suffered any injury at the present time or that an injury is 'imminent,' justifying an unjust enrichment claim.  Instead, they base their claim on the *speculative* outcome of a legal proceeding."  2011 WL 5854640, at *4 (S.D. Fla. Nov. 21, 2011); see also Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir.1988) (where alleged damages depended on the outcome of pending bankruptcy proceeding, claim for damages must be dismissed as premature).

Here, Defendants do not allege that they have suffered any damages.  Under Defendants "unjust enrichment" theory, there are two possible outcomes.  If Plaintiffs proceed with their case and ultimately lose on the merits at trial, Defendants will have suffered no damages and will seek no "offset."  On the other hand, if Plaintiffs are ultimately successful in their claims that they were employees protected by the FLSA and the New Hampshire wage statute and obtain judgment in this action, only then would Defendants' counterclaim present an actual case or controversy and they would seek to "offset" the damages awarded.  Defendants' claim is "wholly contingent upon" the result of Plaintiffs' claims, and therefore it is not ripe.  Lincoln House, 903 F.2d at 847.  The counterclaims do not present a judiciable controversy.

## IV. **CONCLUSION**

For the reasons set forth above, the Court should DISMISS Defendants' counterclaims against the two named Plaintiffs.

Dated: January 18, 2019

Respectfully submitted,

DAVID CAMP and KEITH HADMACK,
on behalf of themselves and all others
similarly situated,

  */s/ Harold L. Lichten*
Harold Lichten (pro hac vice)
Matthew Thomson (pro hac vice)
Lichten & Liss-Riordan, P.C.
729 Boylston St, Suite 2000
Boston, MA 02116
hlichten@llrlaw.com
mthomson@llrlaw.com
(617) 994-5800

Christopher B. Coughlin (#17672)
Coughlin Law Group, PC
35 India Street Suite 3
Boston, MA 02110
617-758-8888
cbc@coughlinlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on January 18, 2019 using the CM/ECF filing system which I understand will send a notice of electronic filing to all parties of record through the Court's system.

Respectfully submitted,

_/s/ Harold Lichten_
Harold Lichten