UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Camp and Keith Hadmack,
on behalf of themselves and all
others similarly situated,
     Plaintiffs

     v.                                    Case No. 18-cv-378-SM
                                           Opinion No. 2019 DNH 020
Bimbo Bakeries USA, Inc. and Bimbo
Foods Bakeries Distribution, LLC,
     Defendants

## O R D E R

David Camp and Keith Hadmack bring this wage and hour collective action, asserting that defendants unlawfully treated them as independent contractors when, in fact, they were employees. As a consequence, say plaintiffs, they were wrongfully denied overtime pay, refused reimbursement for work-related expenses, and subjected to unlawful withholdings from their pay. Having survived defendants' motion to dismiss, plaintiffs now move the court to grant them conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

For the reasons discussed, plaintiffs' motion for conditional certification is granted.

## Background

The factual backdrop to this action was set out in the court's earlier order denying defendants' motion to dismiss (document no. 45) and need not be recounted in detail. It is sufficient to note that Bimbo Bakeries USA and Bimbo Foods Bakeries Distribution (collectively, "Bimbo Bakeries") are in the business of manufacturing, selling, and delivering baked goods under brand names that include Sara Lee and Nature's Harvest. Plaintiffs are among the fifty or so "distributors" in New Hampshire who deliver Bimbo Bakeries products to stock shelves in various stores.

The parties dispute whether plaintiffs (and similarly situated individuals) are entitled to overtime pay under the FLSA. Bimbo Bakeries contends that all of its distributors are independent contractors and, therefore, not entitled to overtime. Plaintiffs, on the other hand, contend that they are actually employees, who were wrongfully denied overtime pay. As noted above, plaintiffs seek conditional certification of a collective action under the FLSA.

## The FLSA and Collective Actions

The portion of the FLSA addressing collective actions provides that:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his <u>consent in writing to become such a party</u> and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis supplied).  Thus, a "collective action" under the FLSA differs from a "class action" under Rule 23 of the Federal Rules of Civil Procedure.  While Rule 23 provides that potential members of a class action must opt out of the litigation if they choose not to participate, the FLSA provides that those individuals who are "similarly situated" to the plaintiff must affirmatively opt into a collective action if they wish to participate.  <u>Compare</u> 29 U.S.C. § 216, <u>with</u> Fed. R. Civ. P. 23.  <u>See also</u> <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1043 (2016) ("while a class under Rule 23 includes all unnamed members who fall within the class definition, the sole consequence of conditional certification under § 216 is the sending of court-approved written notice to employees[,] who in turn become parties to a collective action only by filing written consent with the court.") (citation and internal punctuation omitted).

I.  Conditional Certification.

Courts within the First Circuit typically employ a two-step approach to certification of collective actions under section 216(b) of the FLSA.  See Johnson v. VCG Holding Corp., 802 F. Supp. 2d 227 (D. Me. 2011); Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357 (D. Me. 2010).  In Prescott, Judge Hornby explained that two-step process as follows:

> [T]he certification of a collective action typically proceeds in two stages.  The first stage determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted.  At the first stage, the plaintiff has the burden of showing a reasonable basis for her claim that there are other similarly situated employees.  In other words, the plaintiff must make a modest factual showing that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan.  The standard at the initial stage has been called "not particularly stringent," "fairly lenient," "flexible," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).  Under this "fairly lenient" standard, the initial stage analysis typically results in conditional certification of a collective action.
>
> Later, when discovery is complete, an employer may move to decertify the collective action.  This is the "second" stage, and the court must then make a factual determination as to whether there are similarly-situated employees who have opted in.  Factors relevant to the stage-two determination include: factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and

> the degree of fairness and procedural impact of
> certifying the action as a collective action. If the
> court finds then that employees are not "similarly
> situated," it will decertify the class and dismiss the
> opt-in plaintiffs without prejudice.

Prescott, 729 F. Supp. 2d at 364-65 (D. Me. 2010) (citations, quotations, footnote, and internal punctuation omitted). See also Mejia v. Bimbo Bakeries USA, Inc., No. CV-16-00654-TUC-JAS, 2017 WL 6415357, at *3 (D. Ariz. Aug. 14, 2017) ("Given the light burden, motions to conditionally certify a class for notification purposes are typically granted.") (citations omitted).

So, at this initial stage, plaintiffs bear the "light" burden of demonstrating that there is "a reasonable basis for [their] claim that there are other similarly situated employees." Johnson, 802 F. Supp. 2d at 234 (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008)). While neither the FLSA nor the Court of Appeals for the First Circuit has defined "similarly situated," courts have generally found that "similarly situated employees have similar (not identical) job duties and pay provisions, and are victims of a common policy or plan that violated the law." Prescott, 729 F. Supp. 2d at 364 (citations and internal punctuation omitted).

In support of their motion for conditional certification, plaintiffs assert that all potential members of the collective are required to execute a "Distributor Agreement" with defendants. According to plaintiffs, those Distributor Agreements are all substantially similar - at least in ways material to this litigation.[1] And, say plaintiffs, when viewed in their entirety, those agreements make plain that "distributors" are actually employees, rather than independent contractors. Plaintiffs also allege that all potential members of the collective are subject to similar policies, including defendants' substantial control over the products that Distributors may sell, the price at which they sold those products, the customers to whom they sold, and the fact that defendants purport to serve as the "agent" of Distributors for purposes of negotiating pricing with customers and pursuing business opportunities for them. See generally Scott v. Bimbo Bakeries, USA Inc. 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) (conditionally certifying a substantially similar collective of delivery drivers employed by Bimbo Bakeries). See also Mejia v.

---

[1] The court notes that defendants assert that "at least 10 different [Distributor Agreements] exist virtually all of which have materially varying terms." Defendants' Objection (document no. 33-1) at 4. At this preliminary juncture, however, the court need not resolve whether there are, indeed, material differences in those agreements. That matter can be addressed at the next stage when, presumably, defendants will move to "decertify" the collective.

Bimbo Bakeries USA, Inc., No. CV-16-00654-TUC-JAS, 2017 WL 6415357 (D. Ariz. Aug. 14, 2017) (conditionally certifying a collective of Distributors employed by Bimbo Bakeries in Arizona). And, as in Scott, plaintiffs say they are required by the terms of the Distributor Agreements to service at least some non-profitable customers. See, e.g., Camp Distributor Agreement (document no. 25-4) at § 4.1 (requiring servicing of non-profitable "Outlets" if it is a condition for servicing others in the "Chain"); Haddock Distributor Agreement (document no. 25-5) at § 4.1 (same).

Plaintiffs have satisfied their modest burden to demonstrate a reasonable basis for crediting the assertion that other aggrieved individuals exist who are similarly situated to the plaintiffs in relevant respects, given the claims and anticipated defenses. They have adequately supported their claim that defendants unlawfully maintain a company-wide policy of treating delivery drivers as independent contractors, requiring those drivers to execute substantially similar "Distributor Agreements," and failing to pay those drivers at overtime rates when they work in excess of 40 hours per week.

But, say defendants, that is not sufficient. Plaintiffs, they contend, are required to make an additional showing. That

is, they must identify some unspecified number of other distributors (i.e., those to whom plaintiffs propose to give notice of this action) who are actually interested in joining the action. See Defendants' Memorandum (document no. 33-1) at 15 ("Although this action has been pending for more than 5 months and Plaintiffs have spoken with [defendants' "Independent Business Partners"] specifically regarding this lawsuit and referred them to counsel, no other IBP has opted to join. Nor has another IBP submitted a declaration in support of Plaintiffs' claims. This is yet another independent reason to deny the Motion").

This is an issue on which there is substantial debate, even among district courts in this circuit. Compare Johnson, 802 F. Supp. 2d at 238 (holding that, given plaintiffs' personal knowledge of other potential members of the collective, their failure to identify others interested in joining the litigation precluded granting conditional certification) with Rossello v. Avon Prod., Inc., No. CIV. 14-1815 JAG, 2015 WL 5693018, at *1 (D.P.R. Sept. 28, 2015) ("[T]he Court fails to see the importance of assessing the interest of other Plaintiffs in joining the action at the conditional certification stage when there exists a second stage where Defendant could move to decertify the class if in fact no other plaintiffs opt in.") and

8

Litz v. Saint Consulting Grp., Inc., No. CIV.A. 11-10693-GAO, 2012 WL 549057, at *2 (D. Mass. Feb. 17, 2012) ("Although some courts have imposed this additional requirement, it has not been adopted by the First Circuit. At least in this case, I agree with the plaintiff that this additional step is premature. The purpose of conditionally certifying a class is so that the potential class members may all be notified. To require at this stage a showing that potential class members, who have not been formally notified, want to join the class is inconsistent with the idea that the preliminary certification is only 'conditional.'").

On balance, the court agrees that it is premature to require plaintiffs to demonstrate, before notice is given, that there are other potential members of the collective who are interested in participating in this litigation. Defendants have not produced contact information for the potential opt-in plaintiffs. And, unlike Johnson, where the named plaintiffs already knew the identities of many potential opt-in plaintiffs, that is not the case here. As recognized by the United States District Court for the District of Puerto Rico,

> This Court agrees with the Magistrate that Plaintiffs are not required to make this showing before conditional certification is granted. Imposing such a requirement on Plaintiffs would "put the cart before

9

the horse," as it would force Plaintiffs to issue
their own informal notice before they petition the
Court to issue formal notice. This would undermine a
court's ability to provide potential plaintiffs with a
fair and accurate notice and increase the possibility
of misleading potential plaintiffs. Furthermore,
imposing such a requirement would undermine the broad
remedial goal of the Fair Labor Standards Act.

Rossello v. Avon Prod., Inc., No. CIV. 14-1815 JAG, 2015 WL 5693018, at *1 (D.P.R. Sept. 28, 2015) (citations and internal punctuation omitted). See also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 466 (S.D.N.Y. 2008) ("FLSA plaintiffs are not required to show that putative members of the collective action are interested in the lawsuit in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs.") (citations omitted).

II. Notice to Potential Members of the Collective.

Plaintiffs have proposed that the court conditionally certify the following collective:

> All individuals who executed a Distributor Agreement,
> either on their own behalf or on behalf of a
> corporation or other entity, and personally delivered
> products for Defendants in New England from May 8,
> 2015 to the present.

Defendants object, asserting that the proposed collective would include more than 500 individuals (only about 60 of whom operate in New Hampshire). A collective of that size would require

individualized inquiries into whether the "motor carrier exemption," is implicated, see 29 U.S.C. § 213(b)(1) and 49 U.S.C. § 31502; whether the FLSA's "outside sales" exemption applies, see 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.500(a); whether the "bona fide executive" exemption applies, see 29 U.S.C. § 213(a)(1); and whether each individual was subject to an arbitration agreement (as some Distributor Agreements apparently include arbitration clauses).[2]

At this preliminary stage, however, the potential differences identified by defendants between plaintiffs and other Distributors are not sufficient to preclude conditional certification. As the Scott court observed:

> [W]e acknowledge that Defendants have pointed to several individual differences between Plaintiffs and the proposed class members, including their own use of "employees" or "helpers" and their individual opportunities to generate profits. Defendants have also noted that certain FLSA exemptions may apply to bar certain individual Plaintiffs and potential class members from collecting under the FLSA. However, at this preliminary stage of the case, these differences among proposed class members and the potential impact of FLSA exemptions do not undermine Plaintiffs' modest factual showing. See Westfall v. Kendle

---

[2] Defendants also raise a seemingly non-frivolous argument that this court lacks personal jurisdiction over them as to the FLSA claims of non-New Hampshire members of any collective. That issue requires additional briefing from the parties and can be addressed by the court once a proper notice has been issued and all potential members of the collective have been identified.

>International, CPU, LLC, 2007 WL 486606 at *9
>(N.D.W.V. Feb. 15, 2007) (holding that arguments
>regarding individual differences among class members,
>which are relevant to their status as "employees"
>under the FLSA, are better suited for second stage of
>the similarly situated analysis); Jirak v. Abbott
>Laboratories, 566 F. Supp. 2d 845, 849-50 (N.D. Ill.
>2008) ("[T]he application of an FLSA exemption is an
>affirmative defense on which Defendant carries the
>burden of proof ... [and] whether [plaintiffs] are
>exempt from the FLSA cannot be determined based on the
>limited record developed at this stage") (citations
>omitted).

Scott v. Bimbo Bakeries, USA, Inc., No. CIV.A. 10-3154, 2012 WL 645905, at *10. See generally Chen v. Major League Baseball Props., 798 F.3d 72, 81–82 (2d Cir. 2015) ("The application of an exemption to the FLSA is an affirmative defense. . . . Because the FLSA is a remedial law, exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. Thus, an employer invoking an exemption to the FLSA bears the burden of proving that the establishment is covered by the exemption.") (citations omitted).

## Conclusion

For the foregoing reasons, the court concludes that plaintiffs have adequately alleged that there are other "similarly situated" persons, such that conditional

certification of a collective action to address their (potential) claims under the FLSA is appropriate. Although the size of the group to which plaintiffs propose to give notice may be substantial, and some individual plaintiffs may be barred from recovering under one or more exemptions to the FLSA, those facts give rise to issues best resolved at the second stage of the preferred analysis.

Accordingly, plaintiffs' Motion for Conditional Certification and the Issuance of Notice (document no. 25) is granted and the court conditionally certifies the following collective:

> All individuals who executed a Distributor Agreement, either on their own behalf or on behalf of a corporation or other entity, and personally delivered products for Defendants in New England from May 8, 2015 to the present.

In addition, the Court hereby:

> (1) directs Defendants to identify all members of the described collective and to produce to Plaintiffs within 30 days of this Order a list of the potential opt-in plaintiffs' names, last-known mailing addresses, email addresses, telephone numbers, work locations, and dates of employment;
>
> (2) authorizes Plaintiffs to mail, email, and text the Notice and Opt-in Form attached to Plaintiffs' Motion to all members of the collective identified by Defendants;

(3) grants all individuals identified by Defendants a period of 90 days following receipt of Notice to "opt-in" to this action; and

(4) authorizes a reminder notice to be issued via regular mail, email, and text message to non-responsive class members 45-days after the initial mailing of notice.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 4, 2019

cc: All Counsel of Record