UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Camp and Keith Hadmack,
on behalf of themselves and all
others similarly situated,
     Plaintiffs

     v.                                Case No. 18-cv-378-SM
                                       Opinion No. 2019 DNH 063
Bimbo Bakeries USA, Inc. and Bimbo
Foods Bakeries Distribution, LLC,
     Defendants


**O R D E R**

Pending before the court are several motions for both substantive and procedural relief. The court will address each in turn.


I. Plaintiffs' Motion to Dismiss Counterclaim.

In response to plaintiffs' claims that defendants (collectively "Bimbo Bakeries") improperly classified them as independent contractors, Bimbo Bakeries filed a counterclaim seeking damages for "unjust enrichment." In it, Bimbo Bakeries assert that:

> if the Court finds that Counterclaim Defendants were employees of BFBD or its affiliates (which it should not), it should find that Counterclaim <u>Defendants were enriched</u> as a result of their status as independent contractors, including but not limited to, the revenue they generated and retained by selling certain

>     products to their customers, the profits generated
>     from the sale and/or partial sale of their
>     distribution rights to other IBPs, the revenue
>     generated pursuant to the Advertising Agreements they
>     entered into with BFBD or its predecessor, and the tax
>     deductions they took for the costs of operating their
>     businesses.

Answer and Counterclaim (document no. 48) at 30 (emphasis supplied). In their memorandum of law (document no. 53), defendants more specifically identify the ways by which they claim plaintiffs were enriched (presumably, unjustly) by virtue of their relationships with Bimbo Bakeries.

>     Plaintiffs profited from their sales of bakery
>     products that they purchased from BFBD or its
>     affiliates and then sold to their customers at a
>     higher price.
>
>     Plaintiffs entered into commercial Advertising
>     Agreements pursuant to which they were paid to
>     advertise brands of certain products created by BFBD
>     or its affiliates on their clothing and vehicles.
>
>     Plaintiffs profited by selling portions of their
>     distribution rights, as Plaintiff Camp did on
>     two occasions for a total of nearly $36,000.
>
>     Plaintiffs were able to take tax deductions for costs
>     associated with running their businesses by virtue of
>     their independent contractor status.

Defendants' Objection (document no. 53) at 3.

That is likely an accurate summary of the benefits plaintiffs realized as a consequence of their relationships with

Bimbo Bakeries.  Plaintiffs were "enriched" as a result of their efforts to sell Bimbo Bakeries' products.  Plaintiffs were also "enriched" as a result of their agreements to perform various advertising services on behalf of Bimbo Bakeries.  And, plaintiffs likely were able to avail themselves of various tax deductions available to independent contractors.  But, none of that inured to Bimbo Bakeries' detriment.  Indeed, Bimbo Bakeries were also "enriched" as a result of their relationships with plaintiffs and benefited financially from plaintiffs' efforts to both advertise and sell Bimbo Bakeries' products.  And, by classifying plaintiffs as independent contractors Bimbo Bakeries no doubt avoided substantial employer tax (and perhaps insurance) obligations.  That's typically how business relationships work - each side receives some benefit.

The problem with Bimbo Bakeries' counterclaim is that it fails to plausibly allege how plaintiffs (if properly viewed as employees) were <u>unjustly</u> enriched, <u>at the expense of Bimbo Bakeries</u>.  Nor does it plausibly allege that plaintiffs obtained some benefit from Bimbo Bakeries that would be unjust or inequitable for them to retain if they are deemed to have been employees.  <u>See generally</u>, <u>Estate of Mortner v. Thompson</u>, 170 N.H. 625, 631-32 (2018); <u>Clapp v. Goffstown Sch. Dist.</u>, 159 N.H.

3

206, 210, 977 A.2d 1021, 1025 (2009); Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001).

Many of the cases upon which Bimbo Bakeries rely in support of their unjust enrichment claim are readily distinguishable and of minimal persuasive value. For example, in Parham v. Wendy's Co., 2015 WL 1243535, at *1 (D. Mass. Mar. 17, 2015), the court noted that the employer's counterclaim for unjust enrichment arose "from an allegation that [the plaintiff] recorded work hours when he was not actually performing work for Wendy's, causing Wendy's to pay him for time when he was not working." There is no similar claim in this case.

In a case somewhat analogous to this one (and upon which Bimbo Bakeries rely), exotic dancers claimed they were improperly treated as independent contractors rather than employees. The employer filed a counterclaim, asserting that if the dancers are properly viewed as employees, they should not be permitted to retain "private and semi-private performance fees." Ruffin v. Entm't of the E. Panhandle, 845 F. Supp. 2d 762, 766 (N.D. W. Va. 2011). Specifically, if the dancers were employees entitled to an hourly wage, the performance fees they charged customers (which were characterized as "service fees," rather than "tips") should have gone to their employer. Thus, when

4

calculating damages, the court concluded that those performance fees would be treated as an "offset" against the dancers' entitlements as employees. Id. at 769. See also McFeeley v. Jackson St. Entm't, LLC, 2012 WL 5928769, at *4 (D. Md. Nov. 26, 2012).

The persuasive value of cases like those involving the exotic dancers is, however, limited. The law is well-established that employees are entitled to retain "tips," while employer's are entitled to retain "service fees" when they are entered into the employer's gross receipts. It was also established in those cases (or at least assumed at the dismissal stage) that the performance fees the dancers charged customers of their employer were "service fees." Consequently, if the dancers were properly viewed as employees, they would not, as a matter of law, be entitled to retain their performance fees. See generally 29 C.F.R. § 531.55 (distinguishing between "tips" and "service charges"). See also McFeeley v. Jackson St. Entm't, LLC, supra; Doe v. Cin-Lan, Inc., 2010 WL 726710, at *6 (E.D. Mich. Feb. 24, 2010).

Here, however, there is no established principle of employment law that provides employees are not entitled to retain sums paid to them by their employer to advertise the

5

employer's goods and/or services.  Nor is there any established principle of employment law precluding employees from retaining any profits made when they purchase an employer's products and re-sell them at a profit.  Nor, of course, is there a principle of law establishing that an employer is entitled to an amount equal to any tax deductions that an employee may have erroneously taken.

"Unjust enrichment" is simply a poor fit to the facts alleged in this case.  Nevertheless, the same principle of "offset" discussed in Ruffin will apply in this case should plaintiffs ultimately prevail.  If it is determined that plaintiffs were employees of Bimbo Bakeries, and not independent contractors, their final recovery (if any) will take into account compensation they actually received from Bimbo Bakeries for their labor, as well as sums they should have received had they been properly treated as employees.  Their recovery (if any) will likely amount to the difference between the two, and obviously not the total of the two.  In the simplest of terms, suppose it is ultimately determined that, for all his labor on behalf of Bimbo Bakeries (advertising, selling, and delivering products) a plaintiff actually received $1,400 in a particular workweek.  If it is also determined that, had he been compensated in accordance with the law, he would have received

6

$1,500 in wages and overtime, he will be entitled to recover $100 in damages.

But, that there will likely be various offsets when calculating the total damages to which plaintiffs are entitled (should they ultimately prevail) does not compel the conclusion that Bimbo Bakeries have stated a viable common law claim for "unjust enrichment." They have not.

Bimbo Bakeries' counterclaim fails to plausibly allege the essential elements of a viable common law claim for unjust enrichment against plaintiffs. Accordingly, Bimbo Bakeries' unjust enrichment claim must be dismissed.

II. <u>Defendants' Motion to Reconsider</u>.

Bimbo Bakeries move for "partial reconsideration" of a "narrow aspect" of the court's order granting plaintiffs' motion for conditional certification. Specifically, Bimbo Bakeries assert that it would be inappropriate to send notice of a pending collective action under the FLSA to individuals who are subject to arbitration agreements. In support of that view, Bimbo Bakeries rely upon an opinion of the Court of Appeals for the Fifth Circuit that was issued approximately two weeks after this court's order of conditional certification. <u>See</u> <u>In Re</u>

JPMorgan Chase & Co., 916 F.3d 494 (5th Cir. 2019). According to Bimbo Bakeries, the Fifth Circuit's opinion "is the first decision by an appellate court interpreting the text of the FLSA and the Supreme Court's controlling precedent in Hoffmann-LaRoche as it relates to the propriety of sending notice to individuals with binding arbitration agreements." Defendants' Memorandum (document no. 63-1) at 4. Thus, Bimbo Bakeries implicitly suggest that opinion is entitled to substantial deference.

In JPMorgan Chase, the collective of potential plaintiffs consisted of approximately 42,000 current and former JPMorgan Chase employees. But, the parties did not dispute that approximately 35,000 (or 85%) of those potential members of the collective were subject to binding arbitration agreements (and were thus precluded from participating in the collective action). Id. at 498. Given the absence of any disagreement about the existence or enforceability of those arbitration agreements, it is not surprising that the court held that "[w]here a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification." Id. at 503.

Here, however, the plaintiffs contest both the existence and the enforceability of any arbitration agreements. As the Court of Appeals for the Fifth Circuit noted, "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." In re JPMorgan Chase & Co., 916 F.3d at 502-03 (emphasis supplied). Bimbo Bakeries have not carried their burden.

Despite having had two opportunities to introduce evidence suggesting that at least some potential members of the collective are subject to enforceable arbitration agreements - first, in opposition to preliminary certification and, more recently, in their efforts to obtain reconsideration - Bimbo Bakeries have balked. According to Bimbo Bakeries, the potential collective could include as many as 500 people. Yet, Bimbo Bakeries have not produced even a single executed arbitration agreement signed by a potential member of the collective. Instead, they have merely proffered an untethered "Exemplar Distribution Agreement" (document no. 67), which consists of a few isolated pages extracted from what Bimbo Bakeries say (in their memorandum, and not by way of affidavit)

9

is a Distribution Agreement executed by "many" potential members of the collective. Defendants' Memorandum (document no. 63-1) at 3.[1]

Extended discussion of the point is not warranted. Even if the court were to assume that Bimbo Bakeries have established the predicate elements of a motion to reconsider, see generally Local Rule 7.2(d); Fed. R. Civ. P. 59, they have failed to demonstrate that they are entitled to the relief they seek.

III. Motion for Miscellaneous Relief.

In its order granting plaintiffs' request for conditional certification, the court approved the form of the notice plaintiffs proposed to send to potential members of the collective. See Order dated February 4, 2019 (document no. 54) at 13. Nevertheless, in what plaintiffs describe as a continuation of defendants' "scorched earth litigation strategy," Bimbo Bakeries move the court for "miscellaneous

---

[1] Parenthetically, the court notes that in its opposition to preliminary certification, Bimbo Bakeries represented that potential members of the collective are "bound by at least 10 different forms of the [Distribution Agreement] with materially varying terms (e.g., arbitration agreements)." Opposition Memorandum (document no. 33-1) at 2. If there are, indeed, multiple versions of the Distribution Agreement, with materially different terms, the persuasive value of the single, partial, unsigned, "exemplar agreement" is diminished to an even greater extent.

relief" in the form of an order that disregards its earlier order approving plaintiffs' proposed notice and directs the parties "to meet and confer and submit a [new] proposed joint notice and stipulation regarding the procedure for issuance." Motion for Miscellaneous Relief (document no. 56) at 1. Alternatively, Bimbo Bakeries move the court to simply approve a different proposed notice - one more to Bimbo Bakeries' liking - and "enter an order directing that (1) the Notice should be distributed by a claims administrator at Defendants' expense, or (2) Plaintiffs and their counsel (as well as others acting at their direction) are prohibited from using any names or contact information produced by Defendants for any purpose other than mailing the Court-approved Notice."  Id. at 1-2.[2]

Neither alternative proposed by Bimbo Bakeries is, at least as submitted, reasonable or warranted.  First, given Bimbo Bakeries' short history before the court, it would seem that forcing the parties to meet in an effort to negotiate a mutually acceptable form of notice would likely be a time-consuming, expensive, and futile gesture.

---

[2]   As plaintiffs point out, Bimbo Bakeries already raised many of those issues in its memoranda in opposition to conditional certification.  Consequently, their "Motion for Miscellaneous Relief" is more properly viewed as yet another motion to reconsider the relief awarded in this court's order granting conditional certification (document no. 54).

11

The alternative suggested by Bimbo Bakeries is no more appealing. The proposed notice they have submitted is decidedly one-sided and crafted in a manner seemingly designed to intimidate potential members of the collective. See Defendants' Proposed Notice of Collective Action (document no. 56-2) (dedicating a substantial portion of that document to a detailed discussion of defendants' asserted defenses; containing an equally lengthy discussion of defendants' (now-dismissed) counterclaim and the potential liability faced by anyone who might choose to join the collective; noting Bimbo Bakeries' "right to seek to recover certain litigation costs from you and other Distributors" who join the collective; and warning potential collective members who are subject to an arbitration provision with a liquidated damages clause, "you will be liable to Bimbo Bakeries for $10,000 in liquidated damages if you join a collective action like this case instead of arbitrating your claim.") (emphasis supplied).

As noted earlier, plaintiffs assert that even if some members of the collective have Distribution Agreements that contain mandatory arbitration provisions, those provisions are not enforceable. Defendants' proposed notice implicitly assumes such provisions (as well as the $10,000 liquidated damages

12

clauses) are enforceable. The court has not yet resolved those potential disputed issues.

## Conclusion

For the foregoing reasons, as well as those set forth in plaintiffs' various legal memoranda:

(1) Plaintiffs' motion to dismiss Bimbo Bakeries' counterclaim (document no. 52) is granted and Bimbo Bakeries counterclaim for unjust enrichment is hereby dismissed;

(2) Bimbo Bakeries' Motion for Partial Reconsideration (document no. 63) is denied; and

(3) Bimbo Bakeries' Motion for Miscellaneous Relief (document no. 56) is denied.

On or before May 15, 2019, Bimbo Bakeries shall provide plaintiffs' counsel with the names of all potential members of the collective. They shall also provide plaintiffs' counsel with complete examples of each one of the various Distribution Agreements they say are implicated in this case and they shall indicate which one of those various Distribution Agreements was signed by each potential member of the collective.

Once all potential members of the collective are identified, and it is clear which of those potential members may be subject to enforceable arbitration agreements, plaintiffs may

(if they choose) file an appropriate motion and supporting memorandum of law challenging the enforceability of those arbitration agreements (and, if standing is an issue, plaintiffs may seek leave to amend their complaint to add additional plaintiffs as necessary).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 3, 2019

cc: Harold L. Lichten, Esq.
    Matthew Thomson, Esq.
    Christopher B. Coughlin, Esq.
    William D. Pandolph, Esq.
    Michael J. Puma, Esq.
    Siobhan E. Mee, Esq.