**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| DAVID CAMP and KEITH HADMACK; on behalf of themselves and all others similarly situation,<br><br>          Plaintiffs,<br>     v.<br><br>BIMBO BAKERIES USA, INC. and BIMBO FOODS BAKERIES DISTRIBUTION, LLC,<br><br>          Defendants. | Civil Action No. 1:18-CV-00378-SM<br><br>*ELECTRONICALLY FILED* |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS NON-RESIDENT OPT-IN PLAINTIFFS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL AND PROCEDURAL HISTORY ..................................................... 2

III. ARGUMENT .......................................................................................................... 6

    A. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(2). .......................... 6

    B. Personal Jurisdiction Is an Essential Element of a Court's Authority To Issue a Binding Judgment. ....................................................................... 6

    C. The Court Lacks Personal Jurisdiction Over Defendants With Respect to Claims Brought by Non-Resident Opt-In Plaintiffs. ............................... 7

        1. This Court Lacks General Jurisdiction Over Defendants Because They Are Not "At Home" in New Hampshire. ........................... 8

        2. This Court Lacks Specific Jurisdiction Over Defendants Because There Is No Connection Between New Hampshire and the Claims of Non-Resident Opt-In Plaintiffs. ............................................. 8

            a. The Supreme Court's Opinion in *Bristol-Myers* Prohibits Non- Resident Opt-In Plaintiffs From Pursuing Claims in New Hampshire Against Defendants. ........................... 9

            b. Courts Within The First Circuit Consistently Have Applied *Bristol-Myers'* Reasoning To The Claims of Non-Resident Opt- In Plaintiffs in FLSA Collective Actions. ........................ 11

IV. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
 812 F.3d 54 (1st Cir. 2016) ................................................................................................6

*Allstate Property & Casualty Ins. Co. v. Grohe Canada, Inc.*,
 No. 17-50, 2018 WL 851351 (D.N.H. Feb. 13, 2018) ........................................................7

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
 137 S. Ct. 1773 (2017) ............................................................................................. passim

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
 771 F.3d 59 (1st Cir. 2014) ................................................................................................6

*Chavira v. OS Restaurant Services, LLC*,
 No. 18-10029, 2019 WL 4769101 (D. Mass. Sept. 30, 2019) ..............................2, 10, 12, 13

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ...........................................................................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) .......................................................................................................7, 8

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
 456 U.S. 694 (1982) ...........................................................................................................6

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
 326 U.S. 310 (1945) ...........................................................................................................7

*Maclin v. Reliable Reports of Tex., Inc.*,
 314 F. Supp. 3d 845, 855, 850 (N.D. Ohio 2018) ............................................................12

*N. Laminate Sales, Inc. v. Davis*,
 403 F.3d 14 (1st Cir. 2005) ................................................................................................7

*Pettenato v. Beacon Health Options, Inc.*,
 No. 19-1646, 2019 WL 5587335 (S.D.N.Y. Oct. 25, 2019) .............................................12

*Phillips v. Prairie Eye Ctr.*,
 530 F.3d 22 (1st Cir. 2008) ................................................................................................6

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
 905 F.3d 1 (1st Cir. 2018) ..................................................................................................8

*Roy v. FedEx Ground Package Sys., Inc.*,
353 F. Supp. 3d 43 (D. Mass. Nov. 27, 2018) ........ *passim*

*Roy v. FedEx Ground Package Sys., Inc.*,
No. 17-30116, 2018 WL 2324092 (D. Mass. May 22, 2018) ........ 7

*Saliba v. Greenfield, Stein & Senior, LLP*,
No. 18-498, 2018 WL 3849875 (D.N.H. Aug. 13, 2018) ........ 7

*Scottsdale Capital Advisors Corp. v. Deal, LLC*,
No. 16-545, 2017 WL 3981243 (D.N.H. Sept. 8, 2017) ........ 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 6

*United States v. Swiss Am. Bank., Ltd.*,
191 F.3d 30 (1st Cir. 1999) ........ 6

**Statutes**

28 U.S.C. § 1331 ........ 3

28 U.S.C. § 1367 ........ 3, 4, 5

Fair Labor Standards Act ........ *passim*

RSA § 275:21 ........ 3

RSA § 275:48 ........ 3

RSA § 275:57 ........ 3

RSA § 510:4 ........ 7

**Other Authorities**

Fed. R. Civ. P. 4 ........ 7

Fed. R. Civ. P. 12(b)(2) ........ 2, 5, 6, 14

## I.  INTRODUCTION

Plaintiffs David Camp and Keith Hadmack ("Plaintiffs") filed an action against Defendants Bimbo Bakeries USA, Inc.[1] and Bimbo Foods Bakeries Distribution, LLC ("Defendants") alleging that Defendants misclassified them and others in New England as independent contractors. Plaintiffs Camp and Hadmack are independent contractor Independent Business Partners ("IBPs") who own the exclusive rights to sell and distribute bakery products throughout designated sales areas within New Hampshire.  They seek to recover, among other things, overtime compensation under the Fair Labor Standards Act ("FLSA") on behalf of a conditionally certified collective of IBPs who operate their distribution businesses throughout New England.  Thirty-eight (38) individuals have filed written consents to join the action, twenty-two (22) of whom operate or operat(ed) their independent distribution businesses outside of New Hampshire as set forth in Exhibit A filed herewith.[2]  This Court, however, cannot exercise personal jurisdiction over Defendants with respect to the claims of the Non-Resident Opt-In Plaintiffs.  Their claims should be dismissed.

To establish personal jurisdiction, the Non-Resident Opt-In Plaintiffs bear the burden of demonstrating that jurisdiction is appropriate under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  The Non-Resident Opt-In Plaintiffs cannot meet that burden here.  First, this Court lacks general jurisdiction over Defendants because they are incorporated and headquartered outside of New Hampshire.  *See infra* at 3.  Second, this Court lacks specific personal jurisdiction over Defendants because there is no "connection between the forum and the specific

---

[1] Plaintiffs entered into Distribution Agreements ("DAs") with Bestfoods Baking Distribution Company and BFBD, not BBUSA.  BBUSA is thus not a proper defendant.

[2] The twenty-two (22) non-resident opt-in plaintiffs, each of whom are subject to this Motion, are collectively referred to herein as "Non-Resident Opt-In Plaintiffs" or "Opt-In Plaintiffs."

-1-

claims" of the Non-Resident Opt-In Plaintiffs as required by the controlling Supreme Court precedent set forth in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017).

Federal courts in the First Circuit uniformly have applied *Bristol-Meyers'* reasoning to the claims of FLSA opt-in plaintiffs and, in doing so, found no personal jurisdiction over a defendant with respect to the claims of foreign opt-in plaintiffs. *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 60 (D. Mass. Nov. 27, 2018); *Chavira v. OS Restaurant Services, LLC*, No. 18-10029, 2019 WL 4769101, at *9 (D. Mass. Sept. 30, 2019). The *Roy* Court held: "*Bristol-Myers* requires that the defendant be subject to specific jurisdiction as to the claims of FLSA opt-in plaintiffs in putative collective actions. Similarity of claims, alone, is not sufficient to extend personal jurisdiction to out-of-state opt-in plaintiffs." 353 F. Supp. 3d at 60. The *Chavira* Court subsequently agreed with the "reasoned, thorough, and sound analysis" of the opinion in *Roy*. *See Chavira*, 2019 WL 4769101, at *9. The *Roy* and *Chavira* Courts thus dismissed the claims of FLSA opt-in plaintiffs who worked outside of the forum state.

The same analysis applies here. Accordingly, this Court should dismiss the claims of the Non-Resident Opt-In Plaintiffs pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs' counsel likely will sound false alarms that Defendants' arguments would mean the end of broad collective actions nationwide or across multiple states. That is not true. Plaintiffs could have filed this action in Pennsylvania to obtain general jurisdiction over the Defendants, but they chose not to do so. Moreover, the Opt-in Plaintiffs who should be dismissed will not lose any substantive rights at all, as they each remain free to pursue their individual claims against Defendants in their home states or potentially collectively in Pennsylvania.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Camp and Hadmack are independent business owners—known as IBPs—who purchased the right to distribute and sell various bakery products to customers, such as retail food

outlets and restaurants, in designated sales territories within New Hampshire. Compl. ¶ 20. On May 8, 2018, Plaintiffs filed a Class and Collective Action Complaint and Jury Demand (ECF No. 1) ("Complaint" or "Compl.") in the District of New Hampshire against Defendants. *See generally* Compl. Bimbo Bakeries USA is incorporated in Delaware and Bimbo Foods Bakeries Distribution, LLC is organized in Delaware, with both having headquarters in Horsham, Pennsylvania. *See* Declaration of Charles Croteau (ECF No. 33-5) ("Croteau Decl.") ¶ 2. Plaintiffs allege that they, and all other allegedly similarly situated IBPs who operate their distributorships in New England, were misclassified as independent contractors. According to Plaintiffs, Defendants thus failed to pay them overtime compensation for hours they purportedly spent operating their distributorships over forty (40) per week in violation of the FLSA.[3]

Plaintiffs invoked original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) on the basis of "the FLSA claims asserted in this matter." Compl. ¶¶ 8-9.[4] Plaintiffs further allege that venue is proper in this Court "because both Defendants conduct business in New Hampshire and are subject to personal jurisdiction in this District." *Id.* ¶ 10. Plaintiffs have never articulated why venue would be appropriate here for non-resident opt-in Plaintiffs.

On February 4, 2019, the Court conditionally certified a collective action of current and former IBPs who "executed a Distribution Agreement, either on their own behalf or on behalf of a corporation or other entity, and personally delivered products for Defendants in New England from May 8, 2015 to the present." ECF No. 54 ("Order") at 13. The Court held that the issue of

---

[3] Plaintiffs also have asserted state law claims for unlawful withholdings and deductions in violation of RSA § 275:48, failure to reimburse employee expenses in violation of RSA § 275:57, failure to pay overtime in violation of RSA § 275:21, and unjust enrichment on behalf of a purported class of allegedly similarly situated IBPs who operated their distributorships within New Hampshire.

[4] Plaintiffs also asked this court to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

whether it could properly exercise personal jurisdiction over Defendants with respect to the claims of non-New Hampshire IBPs—which Defendants had raised in their opposition to Plaintiffs' Motion for Conditional Certification—should be resolved after distribution of notice to the putative collective action members and any non-New Hampshire opt-in IBPs were identified. *See* Order at 11, n.2 ("Defendants also raise a ***seemingly non-frivolous argument*** that this court lacks personal jurisdiction over them as to the FLSA claims of non-New Hampshire members of any collective. That issue requires additional briefing from the parties and can be addressed by the court once a proper notice has been issued and all potential members of the collective have been identified.") (emphasis added).[5]

The approximately 560 IBPs who have operated distributorships in New England since May 2015 received notice of their right to opt into the conditionally certified action on or about May 28, 2019. *See* Joint Status Report (ECF No. 82) ¶¶ 14, 17; Croteau Decl. ¶¶ 4-5. Of the over five hundred (500) IBPs who operated their distributorships outside of New Hampshire, twenty-two (22) filed opt-in consent forms. *See* Opt-In Consent Forms (ECF Nos. 80-1, 81-1, 86-1, 87-1, 88-1). The other 95% evidently disagreed with Plaintiffs' misclassification theory or otherwise saw no value in pursuing these claims. By executing and filing opt-in consent forms, the Non-Resident Opt-In Plaintiffs became party plaintiffs to this action pursuant to the joinder mechanism set forth in 29 U.S.C. § 216(b). *See* Opt-In Consent Form (ECF No. 25-2) ("I understand that I

---

[5] Prior to the issuance of notice, the Parties met and conferred regarding the timing of Defendants' anticipated motion to dismiss for lack of personal jurisdiction. *See* Joint Status Report (ECF No. 82) at 5 n.4. They agreed that instead of Defendants filing individual motions as each Non-Resident Opt-In Plaintiff opted-into the action, Defendants would instead file a single motion at the conclusion of the ninety (90)-day opt-in notice period. *See id.* Plaintiffs agreed that they would not argue that Defendants waived any defenses, including as to jurisdiction, based on the timing of this Motion. *See id.* Following the close of the opt-in period, the Parties agreed to engage in private mediation. Thus, the Court granted the Parties' joint motion to adjourn all discovery and case-related deadlines and otherwise stay the action pending mediation. *See* ECF Nos. 85, 89. The Court further ordered that if the Parties did not successfully reach a resolution at mediation, Defendants would be required to file the present Motion for lack of personal jurisdiction on or before December 11, 2019. *See* ECF No. 90. This Motion is thus timely.

will be joining a lawsuit to bring a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the court or any settlement of this action."); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The twenty-two (22) Non-Resident Opt-In Plaintiffs each entered into a DA that limited his or her distribution route to a defined territory outside of New Hampshire. *See* Declaration of Charles Croteau ¶ 2, attached hereto as Exhibit B. These Non-Resident Opt-In Plaintiffs, thus, purchase from Defendants and pick-up the bakery products at depots located outside of New Hampshire, sell those bakery products to customers located outside of New Hampshire, and earn any revenue from the sale of those bakery products outside of New Hampshire. *See id*. In other words, the Non-Resident Opt-In Plaintiffs lack any connection whatsoever to New Hampshire with respect to the operation of their independent distribution businesses. Accordingly, as explained further below, this Court lacks personal jurisdiction over Defendants as to the FLSA claims of the Non-Resident Opt-In Plaintiffs.[6]

---

[6] Should the Court grant this Motion, serious questions will remain as to whether this Court continues to have subject matter jurisdictional over the New Hampshire state-law class action claims. The legal and factual issues arising from those claims depart in many ways from those presented by the FLSA claims, and the size of the New Hampshire state law class far exceeds the number of FLSA opt-in Plaintiffs in New Hampshire. Under these circumstances, the state-law class claims will predominate over the FLSA claims, likely rendering supplemental jurisdiction inappropriate. Defendants are unaware of an alternative basis for subject matter jurisdiction over the New Hampshire state-law class claims beyond 28 USC § 1367. If this Motion is granted, Defendants will meet and confer with Plaintiffs on their position regarding the jurisdictional basis for the New Hampshire state-law claims and reserve all rights to object to the continued exercise of jurisdiction over any such claims at a later date.

### III. ARGUMENT

#### A. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(2).

When considering a challenge to the Court's power to exercise personal jurisdiction, a district court typically uses the *prima facie* standard to evaluate whether it has personal jurisdiction over the defendant. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Id*. The **plaintiff bears the burden** of showing that the court may exercise personal jurisdiction over the defendant and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (internal quotation marks and citation omitted) (emphasis added). Although courts "take the plaintiff's evidentiary proffers as true," they must "consider uncontradicted facts proffered by the defendant." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014).

Where, as here, the Court lacks personal jurisdiction over a defendant, the Court must dismiss any claims against that defendant pursuant to Fed. R. Civ. P. 12(b)(2).

#### B. Personal Jurisdiction Is an Essential Element of a Court's Authority To Issue a Binding Judgment.

Personal jurisdiction is a constitutional requirement. *See, e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause" and "recognizes and protects an individual liberty interest."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible without exception.'") (citation omitted). Giving due credence to the Supreme Court's "exhortations to decide issues of

jurisdiction—both personal and subject matter—before reaching the merits of the case," *United States v. Swiss Am. Bank., Ltd.*, 191 F.3d 30, 46 (1st Cir. 1999), requires that the ability of plaintiffs to join together in an FLSA collective action be subject to the limitations of the court's personal jurisdiction over defendants.

### C. The Court Lacks Personal Jurisdiction Over Defendants With Respect to Claims Brought by Non-Resident Opt-In Plaintiffs.

Fed. R. Civ. P. 4 provides that a federal district court may exercise personal jurisdiction over a nonresident defendant only to the extent authorized by the law of the state in which it sits. *Roy v. FedEx Ground Package Sys., Inc.*, No. 17-30116, 2018 WL 2324092, at *9 (D. Mass. May 22, 2018). New Hampshire's long-arm statute, RSA § 510:4, authorizes jurisdiction over foreign defendants to the full extent of the statutory language and the Due Process Clause. *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005); *Allstate Property & Casualty Ins. Co. v. Grohe Canada, Inc.*, No. 17-50, 2018 WL 851351, at *2 (D.N.H. Feb. 13, 2018). "Because the long-arm statute is coextensive with federal due process, only the due process requirements need to be addressed." *Saliba v. Greenfield, Stein & Senior, LLP*, No. 18-498, 2018 WL 3849875, at *2 (D.N.H. Aug. 13, 2018) (citing *Scottsdale Capital Advisors Corp. v. Deal, LLC*, No. 16-545, 2017 WL 3981243, at *1 (D.N.H. Sept. 8, 2017), *aff'd*, 887 F.3d 17 (1st Cir. 2018)).

The Due Process Clause of the Fourteenth Amendment bars the exercise of personal jurisdiction over a non-resident defendant unless that defendant has "minimum contacts" with the forum state so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *see also Bristol-Myers*, 137 S. Ct. at 1779-80, *discussed infra* at 8-9. There are two types of personal jurisdiction: general and specific. *Bristol-Myers*, 137 S. Ct. at

1779-80 (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Neither exists here, as discussed below.

> **1.    This Court Lacks General Jurisdiction Over Defendants Because They Are Not "At Home" in New Hampshire.**

General personal jurisdiction over a foreign corporation is limited and appropriate only where its contacts with the forum are so systematic and continuous as to render it "***essentially at home*** in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citation and quotation omitted) (emphasis added). This "systemic and continuous" standard sets a high bar. To determine whether a party is "at home," courts look to the party's "domicile, place of incorporation, and principal place of business." *Goodyear Dunlap*, 564 U.S. at 924; *see also Bristol-Myers*, 137 S. Ct. at 1779-80 (finding California court lacked general jurisdiction because defendant was incorporated in Delaware and headquartered in New York); *Roy*, 353 F. Supp. 3d at 54 ("Because FedEx Ground is a Delaware corporation with its principle place of business in Pennsylvania, there is no dispute that Massachusetts courts do not have general jurisdiction.").

Defendants are not subject to general jurisdiction in New Hampshire because they are incorporated in Delaware and their principal place of business is Horsham, Pennsylvania. *See supra* at 3. Accordingly, Non-Resident Opt-In Plaintiffs must rely on specific jurisdiction to sue Defendants in this Court. They cannot meet their burden for the reasons set forth below.

> **2.    This Court Lacks Specific Jurisdiction Over Defendants Because There Is No Connection Between New Hampshire and the Claims of Non-Resident Opt-In Plaintiffs.**

In contrast to general jurisdiction, specific jurisdiction only attaches when the party plaintiff is able to prove that "***its claim directly arises out of or relates to the defendant's forum activities.***" *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018) (emphasis added). In other words, specific jurisdiction requires that the Non-Resident Opt-In Plaintiffs have contacts

-8-

with Defendants in New Hampshire *relevant to the claims in this case*. No such contact is present here because the Non-Resident Opt-In Plaintiffs operate (or operated) their distributorships outside of New Hampshire. *See supra* at 4-5. This conclusion is reinforced by the Supreme Court's controlling and dispositive decision in *Bristol-Myers*, discussed below.

        a.    **The Supreme Court's Opinion in *Bristol-Myers* Prohibits Non-Resident Opt-In Plaintiffs From Pursuing Claims in New Hampshire Against Defendants.**

In *Bristol-Myers*, the Supreme Court held that the Fourteenth Amendment's guarantee of due process protects defendants from having to defend claims with no connection to the forum state by plaintiffs living in other states. 137 S. Ct. at 1773. *Such claims may not proceed even when other claims in the lawsuit—by plaintiffs who do have a connection to the forum, like the two named Plaintiffs here—are appropriately before the court.* *Id.*

In *Bristol-Myers*, over 600 plaintiffs asserted products-liability claims in California state court against Bristol-Myers Squibb Company, which manufactured an allegedly defective prescription drug called Plavix. *Id.* at 1777. The company was incorporated in Delaware and headquartered in New York, while most of the plaintiffs resided outside of California. *Id.* at 1777-78. The California court had held that personal jurisdiction over the claims of all plaintiffs existed, regardless of California residency, because the resident and nonresident plaintiffs alike were asserting claims "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product." *Id.* at 1779. The Supreme Court reversed 8-1, holding that the California court lacked personal jurisdiction over the non-residents' claims despite the legal and factual similarity of their claims. *Id.* at 1781-82.

The Court began by explaining the crucial difference between the two varieties of personal jurisdiction: (1) "specific" (or "case-linked") jurisdiction; and (2) "general" (or "all-purpose") jurisdiction. *Id.* at 1780. In addition to the framework set forth above, the Supreme Court made

-9-

clear that, for corporations, general jurisdiction is limited to the state of incorporation of the corporation's principal place of business (headquarters). *Id.* at 1779-80. The Court also explained that specific jurisdiction requires in particular "'an affiliation between the forum and the underlying controversy.'" *Id.* at 1780 (citation omitted).

In deciding the jurisdictional question, the Court explained that Bristol-Myers was "clearly" not subject to general jurisdiction in California, because (just like Defendants' foreign citizenship here), *Bristol-Myers* was incorporated and headquartered outside of the forum state. *Id.* at 1778. Thus, the California court could only hear the matter if the California court could exercise specific jurisdiction over each of the 600+ plaintiffs' claims. It could not. *Id.* at 1781.

Personal jurisdiction did not attach because the Supreme Court could find no "adequate link" between the California forum and the non-resident's product-liability claims. *Id.* "[T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, [and] did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* It made no difference "that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents. . . . " *Id.* That still did not establish a "connection between the forum and the specific claims at issue" – *i.e.*, the nonresidents' claims. The nonresidents could "not claim to have suffered harm in [California]" and "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1782. "It follow[ed]," then, "that the California courts cannot claim specific jurisdiction." *Id.* The same analysis and result applies here.

      **b.**      **Courts Within The First Circuit Consistently Have Applied *Bristol-Myers'* Reasoning To The Claims of Non-Resident Opt-In Plaintiffs in FLSA Collective Actions.**

*Bristol-Meyers*' straightforward rule applies equally to opt-in party plaintiffs in FLSA collective actions like the one pending here. Judge Robertson's and Judge Burroughs' recent decisions in *Roy* and *Chavira* are instructive.

In *Roy*, the plaintiffs asserted a nationwide putative collective action under the FLSA against FedEx and moved to conditionally certify a collective action consisting of "all similarly situated FedEx delivery drivers around the country." 353 F. Supp. 3d at 54-57. In opposition to the plaintiffs' motion for conditional certification, FedEx argued that *Bristol-Myers* precluded the court from exercising specific jurisdiction over FLSA claims of putative collective action members who worked outside Massachusetts because those claims did not relate to FedEx's contacts with Massachusetts. *Id*. Judge Robertson agreed.

Recognizing that "[t]he constitutional requirements of due process do not wax and wane" depending on whether an individual or collective claim is asserted, the court held that the Supreme Court intended in *Bristol-Myers* to "divest[] courts of specific jurisdiction over the FLSA claims of non-[Massachusetts employed] plaintiffs" *Id*. at 55. The *Roy* decision recognized that, like here, individuals who file written consents with the court in an FLSA collective action ***become parties*** to the action and are therefore "analogous to the individual plaintiffs who were joined as parties in *Bristol-Myers*." *Id*. at 59-60 (explaining that 29 U.S.C. § 216(b) is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have "legal status"). It follows that "*Bristol-Myers* requires that the defendant be subject to specific jurisdiction as to the claims of FLSA opt-in plaintiffs in putative collective actions. Similarity of claims, alone, is not sufficient to extend personal jurisdiction to out-of-state opt-in plaintiffs." *Id*. at 60. Put another way, the plaintiffs in *Roy* were required to demonstrate that FedEx had sufficient minimum contacts with Massachusetts

-11-

to satisfy the constitutional guarantee of due process regarding the claims of each of the non-Massachusetts opt-in plaintiffs. *See id.* Because there was no nexus between FedEx terminals in Massachusetts and the payment of drivers who picked up packages outside of Massachusetts, the Court lacked specific jurisdiction over FedEx with respect to those non-resident drivers. *Id.*

Judge Burroughs reached the same conclusion in *Chavira*. 2019 WL 4769101, at *1. In *Chavira*, an FLSA collective action brought by restaurant managers who alleged they were misclassified as independent contractors, the Court began its analysis by pointing to the controlling principle set forth by the Supreme Court in *Bristol-Meyers*: there must be a "***connection between the forum and the specific claims at issue***" for personal jurisdiction over a defendant to lie. *Id.* at *4 (quoting *Bristol-Myers*, 137 S. Ct. at 1781) (emphasis added). The *Chavira* Court then turned to the question of whether each individual opt-in plaintiff in an FLSA collective action must satisfy the minimum contacts inquiry under the Fourteenth Amendment to establish personal jurisdiction over a defendant. *Id.* at *6. The Court answered affirmatively. Concluding otherwise would have contravened "the law as set forth in controlling precedent" in *Bristol-Myers*, which "repeated twice, [] ***that for each plaintiff***, 'there must be an affiliation between the forum and the underlying controversy . . . .'" *Id.* (rejecting the plaintiff's purportedly contrary "policy" arguments and holding that such cannot relinquish a court's obligation to apply Supreme Court precedent) (emphasis added); *see also Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 855, 850 (N.D. Ohio 2018) (same).

This clear trend in the law continues. Magistrate Judge Moses in the Southern District of New York recently found the reasoning of both *Roy* and *Chavira* persuasive, holding that *Bristol-Meyers* applies to an FLSA collective action. *See Pettenato v. Beacon Health Options, Inc.*, No. 19-1646, 2019 WL 5587335, at *9 (S.D.N.Y. Oct. 25, 2019) ("I agree with *Chavira* and *Roy* that an

FLSA collective action is more comparable to the mass tort action in *Bristol-Myers* than to a Rule 23 class action.").

This conclusion is grounded in the bedrock principle that the FLSA is a "rule of joinder under which [] the opt-in plaintiffs have legal status." *See Chavira*, 2019 WL 4769101, at *5 (internal quotation omitted). Under this analytical framework, there is no meaningful difference between the multi-plaintiff mass tort like the one at issue in *Bristol-Myers* and the FLSA collective action; each contemplates the consolidation of legally and factually similar claims by plaintiffs who join the suit by voluntary consent. For this reason, *Chavira* correctly adopted "*Roy*'s conclusion that the ***personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action***." 2019 WL 4769101, at *6 (emphasis added). Because there was no nexus between the FLSA wage claims of out-of-state opt-in plaintiffs in *Chavira* and the defendant's activities in Massachusetts, Judge Burroughs struck all notices of consent filed by individuals who worked for the defendant outside of Massachusetts. *Id.* at *9.

This Court should do the same. Like in *Bristol-Myers*, and by extension *Roy* and *Chavira*, this Court may not exercise specific jurisdiction over the claims of the Non-Resident Opt-In Plaintiffs because there is "[no] connection between the forum and the specific claims at issue . . . ." *Bristol-Myers*, 137 S. Ct. at 1781. Like the two named Plaintiffs, the Non-Resident Opt-In Plaintiffs are party plaintiffs; they have consented to pursue their overtime claims and be bound by any judgment of this Court. *See supra* at 4-5. But unlike Plaintiffs, the Non-Resident Opt-In Plaintiffs did not operate distributorships (or earn any sales revenue) in New Hampshire. Each of the Non-Resident Opt-In Plaintiffs operated their distributorships exclusively outside of New Hampshire, and thus any alleged harm suffered necessarily occurred outside of the state. *See id.*

-14-

at 5. Consequently, this Court lacks specific jurisdiction over Defendants with respect to the Non-Resident Opt-In Plaintiffs' claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the claims of the Non-Resident Opt-In Plaintiffs identified in Exhibit A filed herewith, pursuant to Fed. R. Civ. P. 12(b)(2).

Dated: December 11, 2019  /s/  *Michael J. Puma*

**SULLOWAY & HOLLIS, PLLC**
William D. Pandolph #5579
9 Capitol St
Concord, NH 03301-1256
(603) 223-2800
wpandolph@sulloway.com

**MORGAN, LEWIS & BOCKIUS LLP**
Michael J. Puma*
1701 Market St
Philadelphia, PA 19103-2921
michael.puma@morganlewis.com

*Admitted Pro Hac Vice*

*Attorneys for Defendants*