UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Camp and Keith Hadmack,
on behalf of themselves and all
others similarly situated,
     Plaintiffs

                                    Case No. 18-cv-378-SM
     v.                             Opinion No. 2020 DNH 056

Bimbo Bakeries USA, Inc. and Bimbo
Foods Bakeries Distribution, LLC,
     Defendants


                        **O R D E R**


     In this wage and hour suit, plaintiffs, David Camp and

Keith Hadmack, have alleged that defendants, Bimbo Bakeries USA,

Inc., and Bimbo Foods Bakeries Distribution, LLC, unlawfully

treated them as independent contractors when, in fact, they were

employees.  On February 4, 2019, the court conditionally

certified a Fair Labor Standards Act ("FLSA") collective action.

Subsequently, 22 opt-in plaintiffs joined the action from

outside the state of New Hampshire.


     Defendants now move to dismiss the claims of 22 non-

resident opt-in plaintiffs.  Plaintiffs, for their part, have

moved to amend their complaint to add state law wage claims on

behalf of those non-resident opt-in plaintiffs.  For the reasons

discussed, defendants' motion is granted, and plaintiffs' motion is necessarily denied.

## STANDARD OF REVIEW

Bimbo has moved to dismiss the FLSA claims brought against them by the non-New Hampshire plaintiffs for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

When a defendant challenges the court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the "plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). In a case such as this, where the court rules based on the "prima facie standard," the pleadings, affidavits, and other written materials, and in the absence of an evidentiary hearing, "the inquiry is whether [plaintiff] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).

A plaintiff may not rely only on unsupported allegations in its pleadings. A Corp., 812 F.3d at 58. "Rather, [a plaintiff] must put forward 'evidence of specific facts' to demonstrate

that jurisdiction exists." Id. (quoting Platten v. HG Bermuda

Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (additional

citations omitted)).  The court accepts plaintiffs' "properly

documented evidentiary proffers as true," and construes them in

the light most favorable to plaintiffs' jurisdictional claim.

Id. (citing Phillips, 530 F.3d at 26) (additional citations

omitted).  The court also considers uncontradicted facts put

forth by defendants, but does not "credit conclusory allegations

or draw farfetched inferences." Negrón-Torres v. Verizon

Communications, Inc., 478 F.3d 19, 23 (1st Cir. 2007) (citations

and quotation marks omitted).


### BACKGROUND

As summarized in an earlier order in this case, defendants,

Bimbo Bakeries USA and Bimbo Food Bakeries Distribution, are in

the business of manufacturing, selling, and delivering baked

goods under brand names that include Sara Lee and Nature's

Harvest.  Bimbo Bakeries USA is incorporated in Delaware, while

Bimbo Food Bakeries Distribution is organized in Delaware.  Both

are headquartered in Horsham, Pennsylvania.  Defendants' website

asserts that they operate more than 6 bakeries, and employ more

than 22,000 associates, distributing products over some 11,0000

sales routes throughout the United States.  In New Hampshire,

defendants operate out of sales centers located in Hooksett and Keene. See Document No. 94-2, 9:24-11:16.

Plaintiffs are "distributors" who deliver Bimbo Bakeries products to stock shelves in various stores. The parties dispute whether plaintiffs (and similarly situated individuals) are entitled to overtime pay under the FLSA. Defendants contend that its distributors are independent contractors, and, therefore, not entitled to overtime. Plaintiffs contend they are actually employees, and have been wrongfully denied overtime pay.

In February, 2019, the court conditionally certified a collective action under the FLSA. Subsequently, approximately 560 distributors who have operated distributorships in New England since May of 2015 received notice of their right to opt into the action. In response to that notice, close to 40 distributors joined the action, 22 of whom are not residents of New Hampshire. Those 22 plaintiffs are citizens of Rhode Island, Massachusetts, Connecticut, Vermont, and Maine.

Defendants say that the 22 non-resident plaintiffs lack any connection to New Hampshire with respect to the operation of their businesses. The non-resident plaintiffs purchase and pick up Bimbo's bakery products outside New Hampshire, and distribute

4

those products along routes wholly outside New Hampshire, to customers located outside New Hampshire. And, defendants argue, any revenue earned by the non-resident plaintiffs from the sale of Bimbo's products occurs outside New Hampshire as well.

Plaintiffs answer that Bimbo employs "countless" employees in New Hampshire, including a Regional Sales Manager (who oversees operations in New Hampshire and Maine); a Market Sales Leader, with responsibilities over a portion of New Hampshire; an Operational Sales Leader, who is responsible for giving paperwork to newly hired distributors; as well as shippers, and outlet clerks. See Document Nos. 94-2, 16:13-25; 24:2-22; 63:6-22; Document No. 94-3, 7:14-17.

Bimbo's operations in New Hampshire, plaintiffs say, are part of a nationwide bakery distribution network that splits the United States into "regions" that are not limited to a single state. Plaintiffs point out that Bimbo operates a bakery distribution center in New York, from which its drivers transport product to New Hampshire sales centers, where those products are picked up by plaintiffs to deliver to stores.

## Discussion

Because plaintiffs' claims arise under federal law, the court's inquiry into whether it may exercise personal

jurisdiction over the defendants is distinct from the inquiry applicable in diversity cases. "In a federal question case, 'the constitutional limits of the court's personal jurisdiction are fixed ... not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment.'" Battle Foam, LLC v. Wade, No. 20-cv-116-SM, 2010 WL 2629559, at *2 (D.N.H. June 29, 2010) (quoting United Elec. Workers v. 183 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992)).

> This distinction is significant "because under the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." Importantly, however, "the plaintiff must still ground its service of process in a federal statute or civil rule."

Id. (quoting U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001)).

The FLSA (the federal statute at issue here) does not authorize nation-wide service of process. Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 53 (D. Mass. 2018). Therefore, plaintiffs must establish that defendants were served with process in a way that comports with the requirements of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which rule requires service in a manner consistent with New Hampshire's long-arm statute.

The New Hampshire long-arm statute's reach (allowing effective service on citizens of other states related to causes of action arising from their New Hampshire activities) is coextensive with the Fourteenth Amendment.  R & R Auction Company, LLC v. Johnson, No. 15-cv-199-PB, 2016 WL 845313 (D.N.H. Mar. 2, 2016) (citations omitted).  Accordingly, the court must determine whether the exercise of personal jurisdiction over out-of-state defendants here in New Hampshire comports with federal constitutional guarantees of due process. Battle Foam, 2010 WL 2629559, at *2.  "The Due Process Clause of the Fourteenth Amendment requires that a defendant 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Baskin-Robbins, 825 F.3d at 35 (quoting Intl. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (further quotations omitted)).

The minimum contacts standard can be satisfied by demonstration of either specific or general jurisdiction. Bluetarp Financial, Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 79 (1st Cir. 2013).  "The plaintiff need not prove the existence of both types of jurisdiction; either one, standing alone, is sufficient."  Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005) (citation omitted).

A.   General Jurisdiction

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)(quotation omitted).  To establish general jurisdiction, the plaintiffs must show that defendants "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (internal quotation marks omitted).  Assessing general jurisdiction requires "appraisal of a corporation's activities in their entirety." Daimler AG, 571 U.S. at 122.

Plaintiffs make a somewhat half-hearted argument that the court has general jurisdiction over defendants based on Bimbo's contacts with the state of New Hampshire.  But, defendants' activities within the state fall short of conduct that would render them "at home" in New Hampshire.  Most critically, defendants are neither incorporated nor headquartered in the state.  As the Supreme Court explained in Daimler, the place of incorporation and principle place of business are paradigm bases for general jurisdiction.  Id. at 760.  "This promotes

predictability, allowing corporations to 'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit' while, at the same time, affording plaintiffs 'recourse to at least one clear and certain forum in which a defendant corporation may be sued on any and all claims.'" Presby Patent Tr. v. Infiltrator Sys., Inc., No. 14-CV-542-JL, 2015 WL 3506517, at *4 (D.N.H. June 3, 2015) (quoting Daimler, 571 U.S. at 139, n. 20).

Of course, Daimler does not "hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business." Daimler, 571 U.S. at 137 (emphasis in original). Daimler instructs that, in an "exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139, n.19.

This, however, is not that "exceptional" case. Within New Hampshire, defendants operate two warehouses, and employ only a handful of individuals. Given defendants' extensive operations outside the state, those New Hampshire contacts are insufficient "to render [defendants] essentially at home" in the state. Daimler, 571 U.S. at 122. See, e.g., BNSF Ry. Co. v. Tyrell,

137 S. Ct. 1549, 1559 (2017) (BNSF not subject to general

jurisdiction in Montana, despite operating one of its automotive

facilities in the state, having more than 2,000 Montana

employees, and more than 2,000 miles of Montana railroad

tracks). Accordingly, defendants' contacts with the state are

insufficient to permit the exercise of general jurisdiction.


      B.    Specific Jurisdiction

      The issue then becomes whether the non-resident plaintiffs

have sufficiently established the court's specific jurisdiction

over defendants. For a court to exercise specific jurisdiction

over a defendant, "there must be an affiliation between the

forum and the underlying controversy, principally, an activity

or an occurrence that takes place in the forum State." McElroy

v. TRT Holdings, Inc., et al., No. 19-CV-844-JD, 2020 WL 733405,

at *1 (D.N.H. Feb. 13, 2020) (quoting Bristol-Myers Squibb Co.

v. Superior Court of Calif., 137 S. Ct. 1773, 1781 (2017)

(internal quotation marks omitted)).


      As our court of appeals recently explained:

      plaintiffs seeking to establish that a court has
      specific personal jurisdiction over a defendant must
      show that: (1) their claim directly arises out of or
      relates to the defendant's forum-state activities; (2)
      the defendant's contacts with the forum state
      represent a purposeful availment of the privilege of
      conducting activities in that state, thus invoking the
      benefits and protections of that state's laws and

> rendering the defendant's involuntary presence in that
> state's courts foreseeable; and (3) the exercise of
> jurisdiction is ultimately reasonable.  [A. Corp.,]
> 812 F.3d at 59.  Failure to make any one of these
> showings dooms any effort to establish specific
> personal jurisdiction.  See id.

Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17,
20 (1st Cir. 2018).

Defendants argue that the claims of the non-resident
plaintiffs plainly do not arise from defendants' activities in
New Hampshire.  And, they say, the Supreme Court's holding in
Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.
Ct. 1773 (2017), divests the court of specific jurisdiction over
the non-resident FLSA claims.  Plaintiffs respond that
defendants' reliance on Bristol-Myers is misplaced because the
Supreme Court did not intend "to dramatically alter the
landscape of class and collective actions in federal courts sub
silentio in its Bristol-Myers Squibb decision."  Pls.' Mem. in
Opp. to Mot. to Dismiss at 3.

### 1.  Bristol-Myers

In Bristol-Myers, 137 S. Ct. 1773, more than 600
plaintiffs, the majority of whom were not California residents,
filed a civil action in California state court "against
[Bristol-Myers], asserting a variety of state-law claims based

on injuries allegedly caused by a [Bristol-Myers] drug called Plavix." Id. at 1777. "The nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." Id. at 1778. "Asserting lack of personal jurisdiction," Bristol-Myers (which was incorporated in Delaware and headquartered in New York) moved to quash service with respect to the claims of the nonresident plaintiffs. Id. After a series of appeals, the Supreme Court granted certiorari "to decide whether the California courts' exercise of jurisdiction . . . violates the Due Process Clause of the Fourteenth Amendment." Id. at 1779.

The Court held that the state court did not have jurisdiction over the out-of-state plaintiffs' claims, stating:

> [i]n order for a state court to exercise specific jurisdiction, "the suit" must "arise out of or relat[e] to the defendant's contacts with the forum." [quoting Daimler,] 134 S. Ct. at 754) [(emphases added in Bristol-Myers)]. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear [ Dunlop Tires Operations, S.A. v. Brown], 564 U.S. [915,] 919 [(2011)] (internal quotation marks and brackets omitted [in Bristol-Myers]. For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes

jurisdiction." <u>Ibid</u>. (internal quotation marks
omitted [in <u>Bristol-Myers</u>]).

<u>Bristol-Myers</u>, 137 S. Ct. at 1780.

The Supreme Court found that connection lacking with
respect to the claims of the non-California resident claims,
noting "[t]he mere fact that <u>other</u> plaintiffs were prescribed,
obtained and ingested Plavix in California – and allegedly
sustained the same injuries as did the nonresidents – does not
allow the State to assert specific jurisdiction over the
nonresidents' claims." <u>Id</u>. at 1781 (emphasis in original).
Bristol-Myer's "unconnected activities in the State" (conducting
research on matters unrelated to Plavix) were not relevant to
the analysis, the Supreme Court said: "[a] corporation's
'continuous activity of some sorts within a state ... is not
enough to support the demand that the corporation be amenable to
suits unrelated to that activity." <u>Id</u>. "What is needed . . .
is a connection between the forum and the specific claims at
issue." <u>Id</u>.

2. Application of <u>Bristol-Myers</u> to FLSA claims

<u>Bristol-Myers</u> did not directly "confront the question
whether its opinion . . . would also apply to a class action."
<u>Id</u>. at 1789 (Sotomayer, J., dissenting). But, since <u>Bristol-</u>

Myers was decided, several courts have held that its principles
do not extend to unnamed class members in Rule 23 class actions.
See, e.g., Rosenberg v. LoanDepot.com LLC, No. CV 19-10661-NMG,
2020 WL 409634, at *13 (D. Mass. Jan. 24, 2020) ("A mass tort
action is fundamentally distinguishable from a class action.
This Court joins the large majority of district courts which
have held the BMS case inapplicable to class actions such as the
instant case.") (collecting cases).  Those courts generally have
reasoned that, "in a mass tort action [like Bristol-Myers
Squibb], each plaintiff is a real party in interest to the
complaints; by contrast, in a putative class action [like the
instant case], one or more plaintiffs seek to represent the rest
of the similarly situated plaintiffs, and the 'named plaintiffs'
are the only plaintiffs actually named in the complaint."
Morgan v. U.S. Xpress, Inc., No. 3:17-CV-00085, 2018 WL 3580775,
at *5 (W.D. Va. July 25, 2018) (quoting Molock v. Whole Foods
Mkt., Inc., 297 F. Supp. 3d 114, 126 (D.D.C. 2018)).

As plaintiffs point out, the impact of Bristol-Myers on
FLSA collective actions is much less clear.  No court of appeals
has addressed that discrete issue, and district courts are
split.

One line of cases holds that Bristol-Myers does not apply
to FLSA collective actions.  See, e.g., Swamy v. Title Source,

14

<u>Inc.</u>, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017). Those district courts generally reason that FLSA claims are "federal claim[s] created by Congress specifically to address employment practices nationwide." <u>Swamy</u>, 2017 WL 5196780, at *2. And, those courts say, application of <u>Bristol-Myers</u> to FLSA claims would "frustrate Congress' goals in passing the FLSA." <u>Warren v. MBI Energy Servs., Inc.</u>, No. 19-CV-00800-RM-STV, 2020 WL 937420, at *7 (D. Colo. Feb. 25, 2020). <u>See also</u> <u>Turner v. Concentrix Servs., Inc.</u>, No. 1:18-CV-1072, 2020 WL 544705, at *3 (W.D. Ark. Feb. 3, 2020) ("Unlike the claims in <u>Bristol-Myers</u>, the FLSA claims before the Court arise from a federal statute designed to address employment practices nationwide. . . . Nothing in the plain language of the FLSA limits its application to in-state plaintiffs' claims. Thus, the Court finds that <u>Bristol-Myers</u> does not divest the Court's personal jurisdiction over [plaintiff's] 'similarly situated' collective action under the FLSA, regardless of where the opt-in plaintiffs may have suffered the alleged injury.") (internal citations omitted); <u>Mason v. Lumber Liquidators, Inc.</u>, No. 17-CV-4780, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) (declining to apply Bristol-Myers to FLSA collective action); <u>Seiffert v. Qwest Corp.</u>, No. CV-18-70-GF-BMM, 2018 WL 6590836, at *2 (D. Mont. Dec. 14, 2018) (same); <u>Meo v. Lane Bryant, Inc.</u>, No. CV186360JMAAKT, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30,

2019) ("As a remedial statute, Congress intended for nationwide FLSA collective actions.  Applying Bristol-Myers to FLSA collective actions would countermand that purpose.").

Other district courts, including two within our circuit, Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43 (D. Mass. 2018), and Chavira v. OS Rest. Servs., LLC, No. 18-CV-10029-ADB, 2019 WL 4769101 (D. Mass. Sept. 30, 2019), have held that Bristol-Myers does apply to FLSA claims, and does divest courts of specific jurisdiction over FLSA claims brought by out-of-state plaintiffs.  See also Maclin v. Reliable Reports of Texas, Inc., 314 F. Supp. 3d 845 (N.D. Ohio 2018); Canaday v. Anthem Companies, Inc., No. 119CV01084STAJAY, 2020 WL 529708, at *5 (W.D. Tenn. Feb. 3, 2020); Vallone v. CJS Solutions Group, Inc., No. 19-1532 (PAM/DTS), 2020 WL 568889 (D. Minn. Feb. 5, 2020); Pettenato v. Beacon Health Options, Inc., No. 19-CV-1646 (JPO)(BCM), 2019 WL 5587335 (S.D.N.Y. Oct. 25. 2019); Rafferty v. Denny's Inc., No. 5:18-cv-2409, 2019 WL 2924998 (N.D. Ohio Jul. 8, 2019); Turner v. Utiliquest, LLC, No. 3:18-cv-00294, 2019 WL 7461197 (M.D. Tenn. Jul. 16, 2019).

In Roy, 353 F. Supp. 3d 43, FedEx delivery drivers brought FLSA claims as a putative nationwide collective action.  FedEx argued that the court lacked personal jurisdiction over it with respect to claims by out-of-state drivers.  The court agreed,

16

concluding that the "principles stated in Bristol-Myers . . .
preclude this court from asserting personal jurisdiction over
the claims of potential opt-in plaintiffs who do not work for
FedEx Ground in Massachusetts." Id. at 58.

The court found plaintiffs' efforts to distinguish Bristol-
Myers unavailing.  Plaintiffs relied on cases "indicating that
Bristol-Myers does not apply to nationwide class actions brought
pursuant to Fed. R. Civ. P. 23 because personal jurisdiction is
gauged by personal jurisdiction over named plaintiffs." Id. at
58.  The court found that reliance misplaced, based on clear
distinctions between Rule 23 class actions and FLSA collective
actions.  "Rule 23 provides for 'opt out' class actions.  FLSA
[216(b)] allows as class members only those who 'opt in.'  These
two types of class actions are mutually exclusive and
irreconcilable." Id. (quoting LaChapelle v. Owens-Illinois,
Inc., 513 F.2d 286, 289 (5th Cir. 1975)).

The court further noted:

The consequences of certification highlight the
distinctions between the class actions under Rule 23
and collective actions under 29 U.S.C. § 216(b).  In a
Rule 23 proceeding in which the class has been
certified under Fed. R. Civ. P. 23(c)(1), the class is
described and has independent legal status. . . .  By
contrast, under the FLSA:

    [a]n action to recover the liability . . . may be
    maintained against any employer . . . in any
    Federal or State court of competent jurisdiction

17

by any one or more employees for and in behalf of
himself or themselves and other employees
similarly situated.  No employee shall be a party
plaintiff to any such action unless he gives his
consent in writing to become such a party and
such consent is filed in the court in which such
action is brought.

29 U.S.C. § 216(b).  "The sole consequence of
conditional certification [under § 216(b)] is the
sending of court-approved written notice to employees
who in turn become parties to the collective action
only by filing written consent with the court, §
216(b)."  Bucceri v. Cumberland Farms, Inc., No.
150cv-13955-IT, 2017 WL 3495693, at *2 (D. Mass. Aug.
14, 2017) (emphasis added) (quoting Genesis Healthcare
Corp. v. Symczyk, 569 U.S. 66, 75 (2013)).  Put
another way, only the employees who affirmatively opt
into the suit by filing their written consent are
parties who are "bound or may benefit from judgment."
LaChapelle, 513 F.2d at 288.  "A collective action is
thus 'a fundamentally different creature than the Rule
23 class action' because 'the existence of a
collective action under § 216(b) [depends] on the
active participation of other plaintiffs.'"  Lichy v.
Centerline Commc'ns LLC, No. 15-cv-13339-ADB, 2018 WL
1524534, at *2 (D. Mass. Mar. 28, 2018) (quoting
Prescott [v. Prudential Inc. Co.,] 729 F. Supp. 2d
[357,] 362 [(D. Me. 2010)].

Roy, 353 F. Supp. 3d at 57-59 (internal citations omitted).


     Thus, said the court in Roy, opt-in plaintiffs in an FLSA

collective action "are more analogous to the individual

plaintiffs who were joined as parties in Bristol-Myers and the

named plaintiffs in putative class actions than to members of a

Rule 23 certified class."  Id. at 59-60.

18

In *Chavira*, 2019 WL 4769101, addressing the same issue, the

court concluded:

> *Bristol-Myers* applies to this case for many of the
> reasons articulated in *Roy*, which presents a reasoned,
> thorough, and sound analysis of this issue.  Further,
> it is difficult to come to a different conclusion
> given the language in *Bristol-Myers*, which is repeated
> twice in the opinion, to the effect that for each
> plaintiff, "there must be an 'affiliation between the
> forum and the underlying controversy, principally, an
> activity or occurrence that takes place in the forum
> State."  *See Bristol-Myers*, 137 S. Ct. at 1780-81
> (alteration omitted) (quoting *Goodyear*, 564 U.S. at
> 919).

*Chavira*, 2019 WL 4769101, at *6.

The *Chavira* court noted its "serious concerns regarding the

implications of its ruling on the future of FLSA collective

actions and acknowledges the policy arguments raised by other

courts."  *Id*.  But, it observed, "[t]his Court's 'obligation to

follow the law as set forth in controlling precedent,' however

cannot overshadow even the most compelling policy arguments."

*Id*. (quoting *Underwood v. Barrett*, 924 F. 3d 19, 21 (1st Cir.

2019)).

The concerns expressed in *Chavira* regarding the

consequences of applying *Bristol-Myers* to FLSA collective

actions are serious.  *Cf, Hoffman-La Roche, Inc. v. Sperling*,

110 S. Ct. 482, 486 ("A collective action allows age

discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."). As the court in Swamy v. Title Source, Inc., 2017 WL 5196780, at *2, pointed out, application of Bristol-Myers to FLSA actions "trespass[es] on the expressed intent of Congress, and greatly diminish[es] the efficacy of FLSA collective actions as a means to vindicate employees' rights."

But, for the reasons given in Roy and Chavira, the court reluctantly, but unavoidably, concludes that Bristol-Myers applies here. That is because "Rule 23 actions are fundamentally different from collective actions under the FLSA." Genesis Healthcare Corp. v. Symczyk, 569 U.S. at 74 (further noting: "Lower courts have borrowed class-action terminology to describe the process of joining co-plaintiffs under 29 U.S.C. § 216(b). While we do not express an opinion on the propriety of this use of class-action nomenclature, we do note that there are significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b).") (emphases added). See also Campbell v. City of Los Angeles, 903 F.3d 1090, 1105 (9th Cir. 2018) ("A collective action is more

accurately described as a kind of mass action, in which
aggrieved workers act as a collective of individual plaintiffs
with individual cases — capitalizing on efficiencies of scale,
but without necessarily permitting a specific, named
representative to control the litigation, except as the workers
may separately so agree.  The opt-in plaintiffs thus choose
whether and when to become parties to a collective action only
by filing a written consent with the court.  And the result of
joining the collective is 'the same status in relation to the
claims of the lawsuit as [that held by] the [original] named
plaintiffs.") (internal citations and quotations omitted).  Cf.,
Mickles on behalf of herself v. Country Club Inc., 887 F.3d
1270, 1278 (11th Cir. 2018) ("Although § 216(b) also requires an
opt-in plaintiff be similarly situated to the named plaintiff,
the opt-in plaintiffs remain party plaintiffs until the district
court determines they are not similarly situated and dismisses
them.  Thus, Appellants were parties to the litigation below and
may appeal adverse judgments against them.").  "Opt-in"
plaintiffs in FLSA collective actions are more like the
individual plaintiffs in Bristol-Myers than members of a Rule 23
class, and that close similarity requires similar outcomes.

     Accordingly, each opt-in plaintiff must establish that a
nexus exists between New Hampshire and their individual FLSA

claim against defendants.  Because the non-resident plaintiffs have not sufficiently established that nexus, the court lacks specific jurisdiction over their claims.

**CONCLUSION**

For the foregoing reasons, as well as those argued in defendants' briefing, the motion to dismiss claims brought by the non-resident opt-in plaintiffs (document no. 91) is **GRANTED**. Plaintiffs' motion to amend their complaint to add claims on behalf of the non-resident opt-in plaintiffs (document no. 93) is **DENIED** as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 7, 2020

cc:  All counsel of record